[No. D055889. Fourth Dist., Div. One. Jan. 7, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
MELWATT MOREHEAD, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Robin Derman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NARES, J.**—This case arose out of three bank robberies, one attempted bank robbery, and several related offenses committed over a period of three days

(Apr. 14, 21, and 22) in 2008.[1] A San Bernardino County jury found Melwatt Morehead, Jr. (Morehead), guilty of three counts of second degree robbery (counts 1, 3 & 4: Pen. Code,[2] § 211), one count of attempted second degree robbery (count 2: §§ 211, 664), four counts of assault with a deadly weapon or by means likely to produce great bodily injury upon a peace officer (counts 5 to 8: § 245, subd. (c)), one count of misdemeanor resisting a peace officer (count 9: § 148), and four counts of second degree commercial burglary (counts 10 to 13: § 459).

Following a bifurcated court trial, the court found true allegations that Morehead had been convicted of two prior strike offenses (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), two serious felonies (§ 667, subd. (a)(1)), and had two prison priors (§ 667.5, subd. (b)). The court sentenced Morehead to a total prison term of 200 years to life plus 10 years.

Morehead appeals the judgment, contending (1) his four convictions of robbery and attempted robbery must be reversed because the court failed to sua sponte instruct the jury that the victims' fear must have been reasonable; (2) his four convictions of robbery and attempted robbery must be reversed because there was no substantial evidence of any reasonable fear on the part of the victims; and (3) the judgment and abstract of judgment must be corrected to give him 40 days of presentence conduct credits, for a total credit of 308 (not 268) days for time served.

Regarding the last contention, the People acknowledge Morehead is entitled to 40 days of presentence conduct credits in addition to the 268 days of actual custody credits. We affirm Morehead's robbery and attempted robbery convictions, modify the judgment to give Morehead 40 days of presentence conduct credits in addition to the 268 days of actual custody credits, and affirm the judgment as modified with directions.

## FACTUAL BACKGROUND[3]

### A. The People's Case

#### 1. Attempted robbery (Bank of America)

On April 14, Jasmin Delacruz was working as a teller at the Bank of America on 7th Street in Victorville, when a man came up to her station,

---

[1] All further dates are to calendar year 2008.

[2] All further statutory references are to the Penal Code.

[3] Our summary of the factual background is brief because many of the facts are not pertinent to the issues raised on appeal. We shall discuss in greater detail the evidence regarding the mental state of the robbery victims in the Discussion portion of this opinion.

which was behind glass, and held up a note that stated, "Robbery 100s/50s." Delacruz testified she "panicked" and, when she told both the teller next to her, Kokila Patel, and their supervisor that they were being robbed, the man walked away. Although Delacruz was unable to identify the robber in a photo lineup, Patel identified Morehead as the robber at a photo lineup about one week after the robbery.

### 2. First robbery (Wells Fargo)

On the same date, April 14, Deanna Martinez (Martinez) was working as a teller at the Wells Fargo bank on East 4th Street in Ontario. A man approached her window and slipped her a note that stated, "This is a robbery." Martinez testified she tried to take the note, but the robber "snatched" it back. She was scared and nervous and gave him $1,600. She identified Morehead as the robber both in a photo lineup and in court.

Anthony Martinez was working with Martinez that same day. His desk was behind Martinez's station, and he saw the robber come forward to the teller line and also observed Martinez "frantically" take cash out of the money drawer and hand it over to the robber. Anthony Martinez identified Morehead as the robber both in a photo lineup and in court.

### 3. Second robbery (Bank of America)

On April 21, Patricia Alarcon was working as a teller at the Bank of America on Palmdale Road in Adelanto. A man approached her station and showed her a note demanding money. Alarcon became scared and nervous and gave money to the man because she was afraid. She identified Morehead as the robber in a photo lineup shown to her the next day, and she also identified him in court.

### 4. Third robbery (Downey Savings)

On April 22, Dawn Dearing was working as a teller at Downey Savings on Hesperia Road and Bear Valley Road in Victorville. A man approached her station, which was behind bulletproof glass, and held against the glass a note that stated, "Robbery, no dye packs, second drawer." Dearing was scared as she grabbed her cash and gave it to him. Dearing gave the robber just over $400. Later that day, an officer took her to Mariposa Road near the freeway in Victorville, where Morehead was in custody. There, Dearing identified Morehead as the person who had robbed her.

### 5. The chase

On that same date, April 22, San Bernardino County Sheriff's Deputy Paul Bader was investigating a traffic collision on Bear Valley Road and 11th

Street when he heard a radio transmission about the Downey Savings robbery, which had occurred minutes earlier near his location. On his marked sheriff's motorcycle, Deputy Bader followed the car Morehead was driving, caught up with him, and activated his lights. The car stopped in the middle of the road, and Deputy Bader, who stopped his motorcycle 15 to 20 feet behind the car, ordered Morehead over the public address system to pull over to the side of the road. Deputy Bader testified he then heard the car tires squeal and saw the car start to accelerate backwards towards him. Deputy Bader, who was still on the motorcycle, was not able to get out of the way, and the car hit the motorcycle, throwing both the motorcycle and Deputy Bader to the ground. A motorcycle tire mark on the road showed that the motorcycle skidded 34 feet before Deputy Bader was thrown from it. Deputy Bader suffered bruising to his legs and scrapes and abrasions to his arms. He was able to broadcast on the radio that he had been hit by a car, as well as the direction of travel of the car. Deputy Bader identified Morehead as the driver of the car that hit him.

San Bernardino County Sheriff's Deputy Peter Gryp was en route to the Downey Savings robbery scene when he heard Deputy Bader's broadcast that he had been hit by a vehicle. When he arrived near the scene in his marked patrol car, Deputy Gryp saw Morehead driving with two wheels on the sidewalk and two wheels on the street, sideswiping other vehicles northbound on Mariposa Road. Deputy Gryp pulled his patrol car into Morehead's path. Morehead accelerated and drove into the side of Deputy Gryp's patrol car.

At the same time, San Bernardino County Sheriff's Deputy James Marshall heard a call about Morehead's car traveling northbound on Mariposa Road. He instructed Deputy Tim Jackson, who was driving the marked patrol car, to drive to the scene. The deputies saw a car that appeared to be driving on the sidewalk. When Deputy Jackson positioned the patrol car to box Morehead in, Morehead struck the side of Deputy Gryp's car, made no effort to stop, accelerated, and hit the passenger's side of Deputies Jackson and Marshall's patrol car. Deputy Marshall was dazed after the collision because his head hit the metal frame of the window. When Deputy Marshall was able to exit the patrol car, he undid Morehead's seatbelt, pulled him out of the car, and, with several other deputies, took Morehead to the ground.

Despite deputies' commands to stop resisting, Morehead pulled his hands underneath his body toward his waist. Deputy Marshall struck Morehead twice in the upper back and was eventually able to handcuff him. Morehead kicked Deputy Marshall in the thigh two or three times. Eventually, the deputies were able to secure Morehead in the patrol car. Deputy Marshall suffered a minor concussion, as well as neck and shoulder strain, as a result of Morehead's behavior.

Deputies recovered deposit slips, money, a black marker, a demand note, and the paper wrap used at banks to wrap stacks of money from Morehead's car. Some of the money matched the serial numbers of the bait money recorded by Downey Savings.

### 6. *Morehead's confession*

San Bernardino County Sheriff's Detective Alvin Huff interviewed Morehead on April 22, after Morehead waived his constitutional rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]. Morehead told the detective he went into Downey Savings that day, showed a note, and received money. Morehead confessed he wrote the note, which stated, "Robbery, no dye packs." Morehead admitted backing his car into an officer's motorcycle. Morehead also admitted jumping the curb, hitting one police car, bouncing off, and hitting another.

### B. *The Defense*

Morehead did not present any evidence in his defense.

## DISCUSSION

### I. *INSTRUCTIONAL ERROR CLAIM*

Morehead contends his four convictions of robbery and attempted robbery must be reversed because the court failed to sua sponte instruct the jury that the victims' fear must have been reasonable. Specifically, he contends the instruction the court gave to the jury under CALCRIM No. 1600 regarding the element of fear was "fatally defective" because it "omits the element that the fear must be reasonable, thereby relieving the prosecution of its burden of proof." This contention is unavailing.

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or *fear*." (Italics added.) Section 212 delineates the meaning of the term "fear" used in section 211: "The fear mentioned in Section 211 may be either: [¶] 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or, [¶] 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."

Here, the court gave standard jury instructions under CALCRIM No. 1600 on the fear element of robbery, telling the jury that "[t]he defendant used

force or fear to take the property or to prevent the person from resisting," and "[f]ear, as used here, means fear of injury to the person himself or herself or immediate injury to someone else present during the incident or to that person's property."[4]

As noted, *ante*, Morehead maintains that a robbery victim's fear, to support a robbery conviction, must be both actual and reasonable. To establish a robbery was committed by means of fear, the prosecution "must present evidence '. . . that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' " (*People v. Cuevas* (2001) 89 Cal.App.4th 689, 698 [107 Cal.Rptr.2d 529], italics omitted (*Cuevas*); see *People v. Davison* (1995) 32 Cal.App.4th 206, 212 [38 Cal.Rptr.2d 438] (*Davison*); *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2 [286 Cal.Rptr. 394] (*Mungia*).) We conclude the trial court had no sua sponte duty to explain to the jury the subjective/objective concept of fear that Morehead urges this court to approve. Alternatively, we hold any instructional error was not prejudicial.

### A. *No Sua Sponte Duty to Instruct on the Subjective/Objective Concept of Fear*

■ "The trial court must instruct even without request on the general principles of law relevant to and governing the case . . . [including] instructions on all of the elements of a charged offense." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1], citation omitted.) Once the court has instructed on the general principles of law, a defendant must request additional instructions if he or she believes amplification or explanation is necessary. (*People v. Maury* (2003) 30 Cal.4th 342,

---

[4] The court instructed the jury with CALCRIM No. 1600 on the elements of robbery, including the element of fear, as follows: "The defendant is charged in Counts 1, 3, and [4] with robbery. [¶] To prove the defendant is guilty of this crime the People must prove that: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was taken from another person's possession and immediate presence; [¶] 3. The property was taken against that person's will; [¶] 4. *That the defendant used force and fear to take the property or to prevent the person from resisting*; [¶] and [¶] 5. That when the defendant used . . . *fear* to take the property he intended to deprive the owner of it permanently. [¶] The defendant's intent to take the property must have been formed before or during the time he used . . . *fear*. If the defendant did not form this required intent until after using . . . *fear*, then he did not commit robbery. [¶] A person takes something when he gains possession of it and moves it some distance. The distance moved may be short. [¶] The property taken can be of any value, however slight. Two or more people may possess something at the same time. [¶] A person does not actually have to hold or touch something to possess it. It is enough if the person has control over it or the right to control it either personally or through another person. [¶] . . . [¶] *Fear, as used here, means fear of injury to the person himself or herself or immediate injury to someone else present during the incident or to that person's property.* [¶] Property is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or *fear*. . . ." (Most italics added.)

425–426 [133 Cal.Rptr.2d 561, 68 P.3d 1] (*Maury*); *People v. Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366] (*Anderson*).)

" '[T]he trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case . . . is not always satisfied by a mere reading of wholly correct, requested instructions.' " (*People v. Miller* (1999) 69 Cal.App.4th 190, 207 [81 Cal.Rptr.2d 410].) " '[T]he trial court has a *sua sponte* duty to give explanatory instructions even in the absence of a request when the terms in an instruction "have a 'technical meaning peculiar to the law.' " [Citations.] No such duty is imposed when the terms "are commonly understood by those familiar with the English language . . . ." ' " (*Ibid.*; see also *Anderson, supra*, 64 Cal.2d at p. 639 ["The law is settled that when terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required."].)

In *Anderson*, the California Supreme Court rejected the argument that a trial court must sua sponte instruct on the " 'legal connotation of fear' " as a necessary element of the crime of robbery, because "[t]he term[] . . . 'fear' as used in the definition of the crime of robbery ha[s] no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (*Anderson, supra*, 64 Cal.2d at pp. 639–640; accord, *People v. Griffin* (2004) 33 Cal.4th 1015, 1025–1026 [16 Cal.Rptr.3d 891, 94 P.3d 1089] (*Griffin*).)

Although *Anderson* does not specifically consider the concept of actual and reasonable fear, this issue was expressly addressed by the California Supreme Court in *Maury, supra*, 30 Cal.4th 342. In the context of the crime of rape, the *Maury* court, relying on *Anderson*, rejected the defendant's argument there was a sua sponte duty to inform the jury that the victim's fear had to be reasonable. The *Maury* court explained:

"Defendant claims that the trial court committed reversible error in failing to instruct sua sponte on an 'essential element of the rape charge,' that [the victim's] fear of immediate and unlawful bodily injury had to be reasonable.

"We rejected a similar claim in [*Anderson, supra*,] 64 Cal.2d 633 . . . . There, the defendant argued that the trial court had a sua sponte duty to instruct the jury as to the requisite force or fear as necessary elements of the crime of robbery. We responded as follows: '[Defendant] does not, however, challenge the content of the robbery instructions given, nor did he request any additional instructions at the trial. [¶] Defendant's contention essentially is that the instructions given needed amplification or explanation; but since he

did not request such amplification or explanation, error cannot now be predicated upon the trial court's failure to give them on its own motion.' [Citation.]

"Similarly, here, the trial court properly instructed the jury on the general principles of law governing the rape charge. . . . Since the instruction given did not omit or withdraw an element from the jury's determination, defendant was required to request an additional or clarifying instruction if he believed that the instruction was incomplete or needed elaboration." (*Maury, supra*, 30 Cal.4th at pp. 425–426.)

█ Here, we reject Morehead's assertion that CALCRIM No. 1600, both as drafted and as given in this case, is "fatally defective" because it "omits the important element that the fear must be *reasonable*." Based on the California Supreme Court's decisions in *Anderson*, *Griffin*, and *Maury*, we conclude the court properly instructed the jury under CALCRIM No. 1600 on the general principles of law governing the robbery charges, including the element of fear, because the term "fear" as used in the definition of robbery has no technical meaning peculiar to the law and is presumed to be within the understanding of the jurors, and thus the court did not have a sua sponte duty to amplify the robbery instructions by telling the jury that each victim's fear had to be both actual and reasonable. (See *Anderson, supra*, 64 Cal.2d at pp. 639–640; *Griffin, supra*, 33 Cal.4th at pp. 1025–1026; *Maury, supra*, 30 Cal.4th at pp. 425–426.) Because the court's instruction did not omit or withdraw an element from the jury's determination, Morehead was required to request an additional or clarifying instruction if he believed that the instructions the court gave under CALCRIM No. 1600 were incomplete or needed elaboration. (See *Maury, supra*, 30 Cal.4th at p. 426.) It is undisputed he failed to do so, and thus error cannot now be predicated upon the court's failure to give such an additional or clarifying instruction.

### B. *No Prejudice*

Alternatively, even if (as Morehead contends) the court committed federal constitutional error by failing to instruct the jury on the actual and reasonable fear concept, we conclude any such error was harmless beyond a reasonable doubt. (See *People v. Flood* (1998) 18 Cal.4th 470, 502–504 [76 Cal.Rptr.2d 180, 957 P.2d 869].)

#### 1. *Applicable legal principles*

█ "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his property." (*People v. Ramos* (1980) 106 Cal.App.3d 591, 601–602 [165

Cal.Rptr. 179], disapproved on other grounds in *People v. Scott* (1994) 9 Cal.4th 331, 353, fn. 16 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; see *People v. Smith* (1995) 33 Cal.App.4th 1586, 1595 [40 Cal.Rptr.2d 31].) It is not necessary that there be direct proof of fear; fear may be inferred from the circumstances in which the property is taken. (*People v. Holt* (1997) 15 Cal.4th 619, 690 [63 Cal.Rptr.2d 782, 937 P.2d 213].)

If there is evidence from which fear may be inferred, the victim need not explicitly testify that he or she was afraid. (*Cuevas, supra*, 89 Cal.App.4th at p. 698; *Davison, supra*, 32 Cal.App.4th at p. 212.) Moreover, the jury may infer fear " 'from the circumstances despite even superficially contrary testimony of the victim.' " (*Davison, supra*, at p. 215; see *People v. Renteria* (1964) 61 Cal.2d 497, 499 [39 Cal.Rptr. 213, 393 P.2d 413].)

The requisite fear need not be the result of an express threat or the use of a weapon. (*People v. Brew* (1991) 2 Cal.App.4th 99, 104 [2 Cal.Rptr.2d 851]; *People v. Flynn* (2000) 77 Cal.App.4th 766, 771 [91 Cal.Rptr.2d 902].) Resistance by the victim is not a required element of robbery (*Griffin, supra*, 33 Cal.4th at p. 1025), and the victim's fear need not be extreme to constitute robbery (*Davison, supra*, 32 Cal.App.4th at p. 216). All that is necessary is that the record show " ' "conduct, words, or circumstances reasonably calculated to produce fear . . . ." ' " (*Brew, supra*, 2 Cal.App.4th at p. 104.)

Intimidation of the victim equates with fear. (*Davison, supra*, 32 Cal.App.4th at p. 214.) An unlawful demand can convey an implied threat of harm for failure to comply, thus supporting an inference of the requisite fear. (See, e.g., *In re Anthony H.* (1982) 138 Cal.App.3d 159, 166 [187 Cal.Rptr. 820].)

### 2. *Analysis*

The prosecution presented overwhelming evidence that each of the robbery victims promptly complied with Morehead's demands for money (or, in the case of Delacruz, would have promptly complied had he not walked away when she sought assistance) as a result of actual and reasonable fear that arose from the implicit threat of harm contained in his demands.

Specifically, Delacruz, the victim of the April 14 attempted robbery at Bank of America, testified that the robber, later identified as Morehead, came up to her station and held a note up to the glass that stated, "Robbery 100s/50s." Delacruz stated that she "panicked" and was "afraid," and she told both the teller next to her and their supervisor that they were being robbed. Delacruz indicated that Morehead was only a few inches from her when he held up the note; he was wearing dark sunglasses and a beanie; and he said "Hurry. Hurry," when he saw her talking to the other teller, who was telling her to go get a supervisor.

A reasonable jury could conclude beyond a reasonable doubt from this evidence that Morehead wore sunglasses and a beanie in an attempt to thwart his identification; he told Delacruz he was robbing her; Delacruz reacted with actual fear that was also objectively reasonable given Morehead's threatening written statement telling her that he was robbing her, his appearance, and his proximity to her; and, but for Delacruz's act of seeking assistance from her coworker and supervisor, which Morehead observed, he would have accomplished the robbery he intended to commit.

Martinez, the victim of the first robbery (at Wells Fargo bank on Apr. 14), testified that Morehead slipped her a note that stated, "This is a robbery," and, when she tried to take the note, he snatched it back. She stated that Morehead wore a black beanie, which covered his eyebrows, and a pair of "really big" sunglasses that prevented her from seeing his eyes; she was scared and nervous; and she tried to push the alarm button as she gave him $1,600. When asked at trial whether the robber was in the courtroom, Martinez displayed continuing fear by responding, "Do I have to look at him?" Martinez's coworker, Anthony Martinez, whose desk was behind Martinez's station, testified he observed Martinez frantically taking cash out of the money drawer and handing it over to the robber.

Any reasonable jury could conclude beyond a reasonable doubt from the foregoing evidence that Morehead again wore very dark sunglasses and a beanie in an attempt to avoid being identified; he told Martinez he was robbing her; she reacted with actual fear that was also objectively reasonable given Morehead's threatening written statement telling her that he was robbing her, his appearance, and his proximity to her; and Martinez's fear allowed Morehead to accomplish the robbery.

Alarcon, the victim of the second robbery (at Bank of America on Apr. 21), testified that Morehead, whom she identified both in a photo lineup and at trial, approached her station wearing a black beanie and showed her a note written with a faded black marker demanding money. Alarcon stated she "got really nervous," she "went blank," and she was "scared" that "if [she] didn't do what [Morehead] said . . . something else could occur." When shown a surveillance camera photo showing Morehead's arm extending into her work station, Alarcon replied, "Yes," when asked whether she was afraid at that time. She testified she opened her drawer and gave Morehead the money when he said, "Hurry. Hurry." Alarcon again indicated she was scared at the time and stated she gave money to Morehead because she was afraid.

A reasonable jury could conclude beyond a reasonable doubt from the foregoing evidence that Morehead once again wore a beanie as a partial disguise; he indicated to Alarcon in his note that he was robbing her; Alarcon

reacted with actual fear that was also objectively reasonable given Morehead's threatening written statement indicating he was robbing her, his appearance, and the fact that he extended his arm into her work station and told her to hurry; and Alarcon's fear allowed Morehead to accomplish the robbery.

Last, Dearing, the victim of the third robbery (at Downey Savings on Apr. 22), testified that Morehead, whom she identified as the person who robbed her, approached her station wearing a black beanie and dark sunglasses that prevented her from seeing his eyes, and held against the glass a note with black marker writing that stated, "Robbery, no dye packs, second drawer." Dearing stated she was scared as she grabbed over $400 in cash and gave it to him.

A reasonable jury could conclude beyond a reasonable doubt from the foregoing evidence that Morehead indicated to Dearing in his note that he was robbing her; he again wore dark sunglasses and a beanie in an attempt to avoid being identified; Dearing reacted with actual fear that was also objectively reasonable given Morehead's threatening written statement telling her that he was robbing her, his appearance, and his proximity to her; and her fear allowed Morehead to accomplish the robbery.

In sum, the evidence of actual and reasonable fear is overwhelming, and thus any error in failing to explain the actual-and-reasonable-fear concept to the jury did not affect the outcome and was harmless beyond a reasonable doubt.

## II. SUFFICIENCY OF THE EVIDENCE (FEAR ELEMENT OF ROBBERY)

Morehead also contends his four convictions of robbery and attempted robbery must be reversed because there was no substantial evidence of any reasonable fear on the part of the victims. Specifically, he again claims that to support a robbery conviction, the victim's fear must be both actual and objectively reasonable; and here, any actual, subjective fear on the part of the tellers was not objectively reasonable under the circumstances because he "never threatened anyone, and never showed a weapon," and thus he "did nothing other than hand the teller[s] a piece of paper requesting money." These contentions are unavailing.

### A. Standard of Review

When assessing a challenge to the sufficiency of the evidence, we apply the substantial evidence standard of review, under which we view the evidence in

the light most favorable to the judgment and determine whether any rational trier of fact could have found the essential elements of the charged crime or allegation proven beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) Stated differently, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson, supra,* 26 Cal.3d at p. 578.)

B.  *Analysis*

For the reasons already discussed, we conclude substantial evidence supports the jury's findings that Morehead committed the attempted robbery and each of the three robberies by means of fear within the meaning of sections 211 and 212. Specifically, we conclude the prosecution presented substantial evidence from which any reasonable trier of fact could find beyond a reasonable doubt, under the circumstances of each incident, that each of Morehead's victims was both subjectively afraid and reasonably afraid during his commission of those crimes, and such fear allowed Morehead to accomplish those crimes. (See *Cuevas, supra,* 89 Cal.App.4th at p. 698; *Mungia, supra,* 234 Cal.App.3d at p. 1709, fn. 2; *Davison, supra,* 32 Cal.App.4th at p. 212.) The facts underlying all of the robbery counts show that Morehead, dressed in a partial disguise, entered the financial institutions and demanded money from the tellers. The testimony of each victim regarding her reaction to Morehead's demand for money reflected a perception that she had no choice but to comply with his demand. Any reasonable jury would conclude the tellers had no way of knowing what Morehead might do if they failed to comply, and their prompt compliance showed they viewed Morehead's demands as carrying an implicit threat he might harm them if they did not immediately hand money over to him. The evidence strongly supports a conclusion that Morehead's demands engendered both actual and reasonable fear in the employees. In sum, substantial evidence supports Morehead's convictions of the robbery and attempted robbery counts.

III.  *PRESENTENCE CONDUCT CREDITS**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

The judgment is modified to add 40 days of presentence conduct credits to Morehead's 268 days of actual credit, thereby increasing his total presentence

---

*See footnote, *ante,* page 765.

credits from 268 days to 308 days. The trial court is directed to amend the abstract of judgment to reflect the increase in presentence custody credits and to forward an amended abstract to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.

Benke, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 13, 2011, S190459.