Filed 1/8/15  In re D.T. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252369 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MJ22273) |
| v. | |
| D.T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Denise McLaughlin-Bennett, Judge.  Affirmed.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

The juvenile court sustained a petition alleging that appellant D.T. committed a robbery in violation of Penal Code[1] section 211, a felony. The court found that appellant was a person described by Welfare and Institutions Code section 602, adjudged appellant to be a ward of the court, and placed appellant on home probation.

Appellant appeals from the orders sustaining the petition and adjudging appellant to be a ward of the court, contending there is insufficient evidence to support the court's finding that appellant committed a robbery. We affirm the court's orders.

Facts

On April 26, 2013, about 10:00 p.m., codefendant Z.C. entered the Rite Aid store on 47th Street in Palmdale. Ignacio Prieto, the assistant store manager, was monitoring the store's video surveillance system and noticed that Z.C. immediately looked at the surveillance camera with a "paranoid" expression. Prieto went to the front of the store to watch Z.C. more closely, but could not find him.

Appellant and three other young men entered the store and spread out into different sections. Appellant approached Prieto and asked where the Tide laundry detergent was located. Prieto asked cashier Diego Marquez to help appellant. Prieto continued to look for Z.C.

Surveillance video showed Z.C. in the liquor aisle. Prieto went to that aisle, heard the sound of bottles clinking and asked Z.C., "What are you doing" and "What do you have?" Z.C. replied, "I don't have anything." Z.C. then handed Prieto a bag of candy. Prieto told Z.C. to leave the store.

Z.C. walked to the store's exit, but refused to leave without his friends. Z.C. indicated that a group of young men at the check-out counter were his friends. Appellant

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

2

approached Z.C. and asked what was going on. Prieto told them both to leave the store. Z.C., appellant and the other young men then left the store as a group.

As the group left the store, they walked past the "EAS" security towers at the exit. The towers activated, indicating merchandise with an electronic sensor was being taken from the store. Prieto said, "Give me what you have." The young men continued out the doors.

Prieto followed the young men outside, as did Marquez. Appellant approached Prieto, got very close to him and said, "[T]here is a problem, what are you going to do." Appellant's hands were raised and Prieto backed away in fear. Two other young men with appellant confronted Marquez.

Z.C. went to a vehicle, an Explorer, put a bottle inside, then returned to the front of the store and stated, "See, I don't have anything." The Explorer "peeled out" of its parking place. As Prieto was taking a photograph of the Explorer's license plate, the Explorer skidded and almost hit Prieto. Appellant left the scene on foot with two companions.

On May 11, some of the young men whom Prieto believed were involved in the April 26 robbery returned to the store. One was appellant.[2] Prieto called the Sheriff's Department.

Los Angeles County Sheriff's Deputy Robert Hawkins came to the store, detained appellant, read him his constitutional rights and asked him if he had been involved in the April 26 robbery of the Rite Aid store. Appellant replied that he had never been involved in a robbery of the store.

Deputy Hawkins reviewed the surveillance video of the April 26 robbery. The deputy then told appellant that he had reviewed the surveillance video, and again asked appellant if he had been involved in the robbery. Appellant stated that he had been

---

[2]     It appears that it was Marquez who identified appellant on May 11. Prieto testified that he did not recognize appellant on May 11.

involved. Appellant stated repeatedly, "I'll go down for it," but refused to provide any details.

At the adjudication hearing, appellant presented testimony from Keisha Davis, who was a friend of his mother. Davis testified that the four young men in the surveillance video were Z.C., M.L., C.T. and "Elijah." They played basketball in front of Davis's house on April 26, then left the area at about 4:00 p.m. Davis did not see appellant in the surveillance video.

Appellant's mother, Eboni Mitchell, testified that she drove appellant to Los Angeles on the morning of April 26 to attend a funeral. They arrived at about 12:45 p.m. and stayed in Los Angeles until about 2:30 a.m. on April 27.

## Discussion

Appellant contends there is insufficient evidence to show that he used force or fear to retain the property taken from the store. He further argues that even if his actions were viewed as fear-inducing, the actions did not facilitate the retention of the property. We do not agree.

### a. General principles of law

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution

4

relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citations.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

   b. Evidence of fear

  Appellant points out that the evidence shows that his hands were open and his palms were facing toward Prieto during their encounter in the parking lot, and contends this evidence shows only that he was making a "stop" gesture, which is not threatening, intimidating or fear producing. We do not agree. The evidence shows more than a neutral "stop" gesture.

  The fear element of robbery includes a "fear of an unlawful injury to the person or property of the person robbed. . . ." (§ 212.) The required fear "is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' [Citation.]" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946.) The victim's fear "need not be the result of an express threat or the use of a weapon. [Citations.]" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775.) Extreme fear is not required. "All that is necessary is that the record show ""'conduct, words, or circumstances reasonably calculated to produce fear. . . .""' [Citation.]" (*Ibid*.)

  Here, Prieto directly testified that he felt "frightened" and backed up when appellant approached and threw up his hands. Prieto felt that the gesture was "antagonizing, like procuring a fight." Prieto was afraid that appellant "might physically engage" with him, because Prieto was "outnumbered."

  Prieto's coworker, Marquez, testified that appellant got "real close" to Prieto and was "less than a foot away from him." Appellant "was getting his hands up, trying to

shove [Prieto] away." Marquez saw Prieto take a step back in response to appellant's gesture.

Prieto and Marquez both perceived appellant's gesture, coupled with his physical closeness to Prieto, as threatening physical contact. This is a reasonable response to the situation. Prieto was in fact frightened. This is sufficient evidence of the fear element of robbery.

b. Facilitation

Appellant contends that even if his actions were fear inducing, the fear did not facilitate the theft, because that "was already accomplished when the boy put the property in the car which drove away from the store."

The force or fear required for robbery need not occur at the time the property is taken. (*People v. McKinnon* (2011) 52 Cal.4th 610, 686.) The use of force or fear to retain possession of the stolen property, or to escape, satisfies the fear element of robbery. (*Ibid*.) However, the fear must "'allow[] the crime to be accomplished.'" (*People v. Anderson, supra*, 152 Cal.App.4th at p. 946.)

Here, Marquez testified that appellant and two other young men were "trying to . . . get in our faces *while* the fourth gentleman approached his vehicle, and tried to put away whatever he took . . . ." (Emphasis added.) Marquez was eventually able to get around the two young men who were in front of him "when the gentleman finally got to the vehicle and put away his - - put away whatever he took. . . . " At that point appellant was still in front of Prieto. According to Marquez, Prieto eventually got around appellant and "was trying to confront the gentleman that actually took our property, trying to retrieve it."

Marquez's testimony is sufficient evidence to show that appellant's intimidation of Prieto facilitated the robbery by allowing the "fourth gentleman" to reach the safety of the

6

Explorer and place the stolen property inside.[3]

Disposition

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GOODMAN, J.[*]

We concur:

TURNER, P.J.

MOSK, J.

---

[3] Prieto's testimony is less clear about the timing of events. At one point, he testified that he forgot about the confrontation with appellant because he saw the young man in blue who actually took the property walking back and saying he did not have anything. This suggests that the confrontation with appellant occurred before or during the time the perpetrator was hiding the stolen item in the Explorer, not after, as appellant contends.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.