Filed 12/8/20  P. v. Shoaf CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B299373 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. VA146308 |
| KYLE LASHAWN SHOAF, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge. Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant Kyle Lashawn Shoaf and a codefendant of four counts of robbery. Shoaf contends insufficient evidence supports one of the robbery counts because the People failed to prove the victim experienced fear during the robbery. We disagree and affirm.

# FACTUAL BACKGROUND

## 1. Prosecution Evidence

In November 2017, Priscilla Perez, Eddie Rojas, Melina Sida, and Omar Lopez were working at a Verizon Wireless store in Huntington Park. Shoaf and Lejon Lindsey,[1] entered the store wearing masks and carrying what appeared to be real handguns.[2] They ordered the four employees to drop to the ground. Everyone except for Lopez, who instead raised his hands, dropped to the floor. Shoaf and Lindsey then ordered the employees to go into a back room where the new cell phones were stored in a safe.

After everyone entered the back room, Lindsey told the employees to open the safe and put the phones inside a bag. Sida opened the safe because she was scared. Lindsey told Sida to remove any "tracker" phones. She put two of the tracker phones on top of the safe and one inside the bag. Lindsey then made Sida and Rojas go into one of the store's restrooms. Sida didn't try to flee from the restroom because she believed Shoaf and Lindsey

---

[1] Lindsey is not a party to this appeal.

[2] The police later determined that Shoaf and Lindsey actually used "air soft" guns, which resembled real handguns but could only shoot plastic BBs.

were carrying real guns. According to Sida, all of the employees looked scared, including Rojas who was shaking.

Lindsey later moved Sida and Rojas to the back room because Shoaf had put the two tracker phones Sida placed on top of the safe inside the bag with the rest of the phones. Sida removed two of the tracker phones and left one inside the bag. Lindsey then ordered Sida and Rojas to go back inside the restroom. Lindsey opened the door to the restroom a couple of times to check on Sida and Rojas.

Lindsey also moved Lopez and Perez to the store's other restroom. Lindsey later entered the restroom twice to tell Perez and Lopez that everything would be okay and that he and Shoaf would be in the store for only a few more minutes. Perez and Lopez were both scared, and Perez was in "shock."

At some point, Sida opened the restroom door and saw Shoaf and Lindsey leave the store. Before Shoaf and Lindsey left, none of the employees tried to prevent them from taking any of the store's phones.

Perez then called the police, who later arrested Shoaf and Lindsey after tracking one of the stolen phones. One of the officers who responded to the store after the robbery observed that all four employees "were under duress." He didn't ask any of the employees whether they "were scared" because "[t]hey were shaken up at the time, so [he] already knew that they were in fear."

## 2.    Defense Evidence

Shoaf testified. He believed the robbery was an "inside job" in which the employees participated. He and Lindsey used fake guns that looked real so no one who viewed the security footage would know the employees were part of the robbery. Shoaf

3

couldn't explain, however, why Sida would place a tracker phone in Shoaf's and Lindsey's bag if she were part of the robbery. Shoaf agreed that using masks and guns that look real would create a more frightening environment for the victims if they were not part of the robbery plan.

## PROCEDURAL BACKGROUND

The People charged Shoaf with four counts of robbery (Pen. Code,[3] § 211; counts 5–8) and alleged that, as to each count, he personally used a pellet gun to facilitate the offense (§ 12022, subd. (b)(1)). The People further alleged Shoaf suffered a prior strike and a prior serious felony conviction.

At trial, Perez, Sida, and Lopez, but not Rojas, testified. A jury convicted Shoaf of all four counts of robbery. After finding true the prior strike and prior serious felony conviction allegations, the court sentenced Shoaf to 17 years in prison.

Shoaf appeals.

## DISCUSSION

Shoaf contends insufficient evidence supports his robbery conviction under count 7 because the People failed to prove the victim, Rojas, was actually in fear when defendant committed the offense. We disagree.

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Section 212 defines the term "fear" for purposes of robbery as: (1) "The fear of an unlawful injury to the person or property of

---

[3] All undesignated statutory references are to the Penal Code.

4

the person robbed, or of any relative of his or member of his family;" or (2) "The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." (§ 212.) " 'The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his property.' " (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774 (*Morehead*).)

The fear necessary for robbery is subjective. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946.) The People, therefore, must present evidence that the victim actually experienced fear that enabled the robbery to occur. (*Ibid.*) But fear may be inferred from the circumstances surrounding the commission of the offense, such as through observations of the victim's demeanor after the defendant obtained the property. (*People v. Holt* (1997) 15 Cal.4th 619, 690.) Thus, it is not necessary for the victim to testify that he was in fact afraid to establish actual fear for purposes of robbery. (*Ibid.*; see also *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698 ["Actual fear may be inferred from the circumstances, and need not be testified to explicitly by the victim."].) "Moreover, the jury may infer fear ' "from the circumstances despite even superficially contrary testimony of the victim." ' " (*Morehead, supra*, 191 Cal.App.4th at p. 775.)

To determine whether substantial evidence supports a conviction, we review the entire record in the light most favorable to the judgment to determine whether any rational trier of fact could have found the evidence proved the elements of the crime beyond a reasonable doubt. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We draw all reasonable inferences in favor of the judgment and do not resolve credibility issues or evidentiary

5

conflicts. (*Ibid*.) If the evidence reasonably justifies the trier of fact's findings, the reviewing court's opinion that the evidence might also reasonably support a contrary finding does not warrant reversing the judgment. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Thus, we can only reverse for insufficient evidence if it is so clear that " ' "upon no hypothesis whatever is there sufficient evidence to support" ' " the judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Substantial evidence supports Shoaf's robbery conviction under count 7. Although Rojas did not testify at trial, the People presented sufficient circumstantial evidence to support an inference that Rojas experienced actual fear that enabled the robbery. For instance, Sida, who was with Rojas throughout the robbery, testified that Rojas "looked scared" after they were placed in the bathroom while Shoaf and Lindsey gathered phones in the back room. When asked how she could tell that Rojas was scared, Sida answered, "[W]e were both pretty much shaking at that point in the bathrooms. Scared." Additionally, the officer who responded to the Verizon store testified that all the employees looked scared and shaken up even after the robbery had ended.

The circumstances surrounding the robbery also support an inference that Rojas was afraid. Shoaf and Lindsey used what appeared to be real handguns throughout the robbery. None of the victims, including Rojas, tried to stop Shoaf or Lindsey at any point during the robbery. And, although everyone except Sida appeared to hesitate when Lindsey ordered them to open the safe, every employee, including Rojas, otherwise complied with Shoaf's and Lindsey's demands throughout the robbery. (*Morehead*, *supra*, 191 Cal.App.4th at p. 775 ["[i]ntimidation of the victim equates with fear," and an unlawful demand can

convey an implied threat of harm for failure to comply].) In any event, a jury reasonably could infer that Lopez, Perez, and Rojas hesitated when asked to open the safe out of fear or shock because they believed they were being held at gunpoint.

Shoaf relies heavily on the court's analysis in *Morehead* to contend the People failed to prove Rojas was in fear during the robbery. There, the court of appeal upheld the defendant's robbery convictions after it concluded the People presented "overwhelming" evidence proving the victims experienced actual fear as a result of the defendant's conduct. (*Morehead, supra,* 191 Cal.App.4th at pp. 777, 778.) For example, all the victims testified that they were afraid, panicked, or fearful throughout the robbery and the evidence showed every victim promptly complied with the defendant's commands. (*Id.* at pp. 775–777.) Shoaf argues that because the People in this case did not present the same quantity of evidence as the prosecution in *Morehead*, such as testimony from each robbery victim explaining his or her fear, to show Rojas actually experienced fear that enabled the robbery, there necessarily is insufficient evidence to support Shoaf's conviction under count 7. This argument is misplaced.

Nothing in *Morehead,* or any other authority Shoaf cites, suggests that *Morehead* establishes the evidentiary baseline for proving the fear necessary to sustain a robbery conviction. Indeed, as the court in *Morehead* explained, "fear may be inferred from the circumstances in which the property is taken[,] … [¶ and,] [i]f there is evidence from which fear may be inferred, the victim need not explicitly testify that he or she was afraid." (*Morehead, supra,* 191 Cal.App.4th at p. 775.) Thus, even by its own terms, *Morehead* rejects the contention that the prosecution *must* present direct evidence of fear, such as the victim's testimony explaining his fear, to support a robbery conviction.

7

Because the People presented sufficient circumstantial evidence to prove Rojas was in actual fear during the robbery, substantial evidence supports Shoaf's conviction under count 7.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                              LAVIN, J.

WE CONCUR:



EDMON, P. J.



EGERTON, J.