Filed 2/23/21  P. v. Hernandez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EFRAIN HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B304174<br>(Super. Ct. No. 2018034376)<br>(Ventura County) |

Efrain Hernandez appeals a judgment following his conviction for second degree robbery.  (Pen. Code, § 211.)  The trial court sentenced him to three years in state prison.  We conclude, among other things, that 1) the trial court did not err by admitting evidence of prior uncharged crimes; and 2) the court properly instructed the jury with the CALCRIM No. 1600 jury instruction on robbery.  We affirm.

FACTS

On September 18, 2018, Jorge Barbalazo was employed at an Arco am/pm store.  He saw Hernandez inside the store in the act of stealing two cans used to fix flat tires.  He approached

Hernandez to prevent him from stealing the cans. Hernandez threw one can to Barbalazo's right leg. Barbalazo told Hernandez to leave the other can. Barbalazo put his hand on the store door.

Hernandez punched Barbalazo in the face. Barbalazo did not touch Hernandez prior to the time Hernandez punched him. Hernandez went outside the store. Barbalazo and Hernandez fought. Hernandez walked away.

The People introduced a video surveillance tape of this incident. It was played for the jury. The parties stipulated that the person shown on the video wearing "a hooded black sweatshirt" is Hernandez.

In the defense case, Hernandez testified that on September 18, 2018, he went into the store because he needed a tire inflator. He had a flat tire on his bicycle. He took two tire inflator cans. He concealed one under his armpit and held the other in his hand. He testified he had a "shirt draped over [his] arm as well." His intent was to leave the store with the cans without paying.

Hernandez saw two employees "coming at [him]." One "looked kind of aggressive"; the other had a bat. He put down one can and forgot about the other. His intent was to leave the store because he was afraid. He believed that he had "left everything behind, not knowing [he] had the second one in [his] armpit." He testified he used force "to defend [him]self." He swung at one employee, punched him once, and then left.

*Evidence Involving Three Prior Thefts by Hernandez*

At a pretrial hearing the prosecutor asked the court to allow the People to introduce evidence to rebut Hernandez's defense testimony. The prosecution wanted to introduce evidence about prior thefts committed by Hernandez. Over a defense

2

objection, the trial court ruled the People could cross-examine him about three prior thefts where he had used force.

During cross examination, Hernandez testified that in 2017 he had stolen items inside a Walgreens store and at a Doc's Beer & Wine. In each case, when an employee tried to prevent the thefts, he used force against the employees to take the items and then left the store. In 2018, he entered a Circle K, took a beer, and when an employee tried to stop him, he used force to steal the beer.

*The Jury Instruction on Robbery*

The trial court indicated it would use the standard CALCRIM No. 1600 jury instruction on robbery. Hernandez's counsel proposed a modification of that instruction. The court denied the request. It found the modification was not necessary.

DISCUSSION

*Admitting Evidence of Three Prior Thefts*

Hernandez contends the trial court erred when it applied Evidence Code section 1101 to admit his three instances of prior thefts.

The People respond that the trial court properly exercised its broad discretion when it admitted the evidence of Hernandez's uncharged crimes. We agree.

In a pretrial proceeding, the prosecutor noted that Hernandez's defense was going to be that he left the store with a stolen item that he had forgotten about, and he used force against a store clerk solely for self-defense, and not with the intent to steal the item. She said the People had the right to impeach that defense by introducing evidence of prior thefts where Hernandez had used force against store employees to take stolen items from the stores. The prosecutor said these prior

3

events show that in the current case Hernandez's "*intent* was not fear and not forgetfulness, but rather . . .he steals, and he uses force to steal." (Italics added.)

The trial court ruled the People could use three prior theft cases involving Hernandez where he had used force. It said, "I think it is close enough in time and conduct to establish that a rebuttal to any argument by the defense that *the defendant's intent* in using force was something other than to allow him to keep the goods that he had secreted in his sweatshirt." (Italics added.)

Hernandez contends the trial court erred by authorizing admission of three prior theft cases where he had used force. He claims, "Based on the three instances of use of force presented in this case, the jury may have convicted [him] merely on the assumption that he had a propensity to use force during thefts. Without evidence of those three prior thefts that involved the use of force, the jury would have necessarily been forced to consider, in isolation, whether [he] used the required force in this specific case."

The People respond that this "evidence was material to determine whether [Hernandez] hit Barbalazo out of fear, as [Hernandez] claimed, or to escape with the stolen items." They claim the trial court acted within its discretion because "it established [Hernandez's] intent when he hit Barbalazo."

Evidence Code section 1101, subdivision (a) generally provides that "evidence of specific instances" of a person's "conduct" is "inadmissible when offered to prove his or her conduct on a specific occasion." But subdivision (b) provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act *when*

4

*relevant to prove* some fact (such as motive, opportunity, *intent*, preparation, plan . . . other than his or her disposition to commit such an act." (Evid. Code, subd. (b), italics added.)

"[E]vidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a common design or plan." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402.) *"The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."* (*Id.* at p. 402, italics added.) " *'[T]he recurrence of a similar result . . . tends* (increasingly with each instance) *to negative* accident or inadvertence or *self-defense* or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' " (*Ibid.*, italics added.) "A greater degree of similarity is required in order to prove the existence of a common design or plan." (*Ibid.*)

Here Hernandez testified about the three prior thefts when questioned by the prosecutor as follows:

On January 1, 2018, Hernandez went to a Circle K, and took beer from a cooler. When a female employee put her hand on the cooler to stop the theft, Hernandez pushed her away to take the beer without paying for it, and left.

On January 22, 2017, Hernandez went to Walgreens. He took a sweatshirt and a Pepsi. When a store employee tried to stop him, he shoved the employee out of the way to escape with the stolen goods.

On October 5, 2017, Hernandez entered Doc's Beer & Wine. He took milk and beer. A lady at the store tried to stop his theft.

He hit her in the head, then left the store with the milk without paying for it.

Here all three incidents were highly relevant on the issue of intent. They were all recent events and were very similar to the current case. All shared a common intent to use an escape plan. When confronted with a store employee seeking to stop the theft, Hernandez used force to take the stolen items out of the store. The recurrence of these "similar" results is relevant evidence to negate the defendant's claim that he only intended to use force in self-defense. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) This evidence tends to show criminal intent, rather than innocent intent, was the motivation for his actions. (*Ibid*.)

The People contend that even aside from intent, the prior thefts also showed evidence of a repetitive "common plan" and the prior theft evidence was alternatively admissible on that ground. We agree.

The trial court ruled the evidence was admissible to prove intent; it did not mention common plan. But a ruling correct on the law may also be sustained on a different ground than the one the trial court stated, where that ground is supported by the facts and the law. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) A greater degree of similarity is required to prove common design or plan than to prove intent. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

Here there were significant common features in each of the three prior theft incidents to support admissibility on the ground of common plan or design. The prior incidents included the following common features: 1) Hernandez entered the store to steal property, 2) he took items while in the store, 3) he was spotted by a store employee or individuals who intervened to try

6

to stop the theft, 4) those individuals did not initiate violence or force against Hernandez, 5) Hernandez *initiated* force or violence against them, 6) he did not act in self-defense, 7) he left the stores with the stolen items, and 8) he used force with the intent to steal the item. A reasonable inference is that the three prior thefts and the current offense were all part of a consistent common plan or design. The "distinctive shared characteristics" of the prior thefts with the current offense "increased the probative" value to show "the defendant committed both offenses pursuant to a common design or plan." (*People v. Balcom* (1994) 7 Cal.4th 414, 425.) It is Hernandez's burden on appeal to show an abuse of discretion. He has not done so.

Moreover, Hernandez has not shown a reasonable probability of a different result had the trial court excluded the evidence. His defense was based on the claim that he forgot he was carrying the stolen item when he used force. But the jury could reasonably find this claim was not credible. Hernandez was not carrying a tiny item such as a watch or pen that he could have overlooked after he concealed it. He was carrying a can of tire inflator of significant weight at the time he used force. The store video surveillance tape DVD evidence shows Hernandez *initiated* violence against the store employee as he left the store with the stolen can. The jury could reasonably find that video DVD evidence impeached the credibility of Hernandez's self-defense testimony.

*The CALCRIM No. 1600 Jury Instruction on Robbery*

Hernandez contends the trial court erred by declining to use the "modified version" of the CALCRIM No. 1600 jury instruction on robbery that his counsel requested. He claims the

7

modified version was necessary to more accurately reflect the defense theory of the case.

The People respond that the "pattern robbery instruction adequately explained that [Hernandez] could not be found guilty of robbery if he abandoned the tire inflator cans and no longer intended to deprive [the victim] of the property when [Hernandez] used force against him." (Boldface & initial capitalization omitted.) They contend the modification Hernandez proposed was duplicative of CALCRIM No. 1600. We agree.

The trial court instructed the jury with CALCRIM No. 1600, which provides in relevant part, "The defendant is charged with robbery in violation of Penal Code section 211. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was in the possession of another person; [¶] 3. The property was taken from the other person or his or her immediate presence; [¶] 4. The property was taken against that person's will; [¶] 5. The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND 6. *When the defendant used force or fear to take the property, he intended to deprive the owner of the property permanently*." (Italics added.)

After listing these six elements, the CALCRIM No. 1600 robbery instruction also provides, "*The defendant's intent to take the property must have been formed before or during the time he used force or fear.* If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery." (Italics added.)

8

Hernandez requested the trial court to modify the CALCRIM No. 1600 instruction. He claimed "the two sentences following the sixth element, as currently phrased, vitiates the defense, [which is that he forgot] he had the second can on him when he abandoned the other property and then defended himself by punching the clerk, [which is] a complete defense to the crime of robbery."

Hernandez requested that the following language should be substituted for the two sentences following the sixth element in the CALCRIM No.1600 instruction: *"The defendant's intent to take the property must have existed at the time he used force or fear*. If the defendant did not form the required intent until after using the force or fear, then he did not commit robbery." (Italics added.)

The prosecutor objected to this modification on the ground that the language of the CALCRIM No. 1600 instruction was consistent with California Supreme Court decisions on robbery instructions.

The trial court declined to modify the instruction. It instructed the jury with the original CALCRIM No. 1600 jury instruction.

Hernandez contends the trial court erred by not modifying the instruction as he requested because the original CALCRIM No. 1600 instruction was not a valid or proper instruction for this case. We disagree.

Courts have held that the CALCRIM No. 1600 instruction is a proper instruction for the crime of robbery. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774.) Moreover, the specific language Hernandez objected to in the CALCRIM No. 1600 instruction is the same language our Supreme Court

9

approved in *People v. Bolden* (2002) 29 Cal.4th 515, 556.  There the court said, "[F]or the crime of robbery the defendant *must form the intent to steal before or during rather* than after the application of force to the victim . . . ."  (*Ibid.*, italics added.)

The People claim the language that Hernandez wanted to add to the CALCRIM No. 1600 instruction is also duplicative of language already in the original CALCRIM No. 1600 instruction. We agree.

The defense has a right for an instruction that pinpoints the theory of the defense.  (*People v. Bivert* (2011) 52 Cal.4th 96, 120.)  But a trial court may refuse a request for a defense instruction that is duplicative of the language of another instruction.  (*Ibid.*)

Here Hernandez wanted to add the following language: "*The defendant's intent to take the property must have existed at the time he used force or fear*."  But element 6 of the CALCRIM No. 1600 instruction already provided, "When the defendant *used force or fear* to take the property, *he intended* to deprive the owner of the property permanently."  (Italics added.)  Both these instructions highlight the same point, that the intent to take property must occur at the time the defendant uses force or fear. The trial court could reasonably find the requested new language was not necessary because of element 6 of the CALCRIM No. 1600 instruction.

Hernandez contends the modified language he proposed was necessary so the jury would not be confused about the intent issue.  He suggests that CALCRIM No. 1600 was confusing and would not allow the jury "to consider whether [he] had the requisite intent at the time he used force against the clerk."

10

In cases where an appellant claims the language of an instruction might confuse jurors, we start by determining how a juror of reasonable intelligence would understand the language. (*People v. Pearson* (2013) 56 Cal.4th 393, 476.) We presume the jury is capable of understanding the instructions given and properly applying them to the facts of the case. (*People v. Carey* (2007) 41 Cal.4th 109, 130.) Here the language of the CALCRIM No. 1600 instruction was not complex and it provided the jury with all the required elements of the crime of robbery. (*People v. Morehead*, *supra*, 191 Cal.App.4th at p. 774.) A reasonable juror would find the language involving the six robbery elements to be very easy to understand. Hernandez has not shown that any language in the CALCRIM No. 1600 instruction would cause jurors to omit their duty to find whether Hernandez had the requisite intent at the time he used force as required by element 6.

The trial court ruled the language in element 6 of the CALCRIM No. 1600 instruction and the sentences that follow element 6 were not confusing or inconsistent. The court said, "The element number six is talking about the timing of the force used, and the paragraph below . . . is talking about the timing of the intent to steal. So they're not inconsistent or contradictory. They're talking about two different issues." The language about the intent to steal that Hernandez claimed was confusing is the same language that is found in California Supreme Court decisions on robbery. (*People v. Bolden*, *supra*, 29 Cal.4th at p. 556.)

Moreover, the trial court went further and ruled that defense counsel, in talking about this jury instruction in closing argument, could tell jurors that if they accepted the defense

11

theory that Hernandez abandoned his intent to steal at the time he used force, then under the instruction this would mean Hernandez could not be convicted of robbery.

In closing argument, Hernandez's counsel told jurors that Hernandez only had the intent to defend himself at the moment he swung. Counsel said, "[Hernandez] did not have the intent [to steal] at that moment that he swung." "He no longer had the intent to steal at the moment he decided to defend himself."

The People in closing argument also focused the jury's attention to the key issue – Hernandez's intent at the time he used force. The prosecutor asked the jury, "What was [Hernandez] thinking when he punched Mr. Barbalazo in the face? Was he really afraid or was he just trying to get out of there with that second can of tire inflator?"

On appeal, the reviewing court may consider the instruction given and the arguments of counsel in determining whether jurors would be confused about their duty to follow the instructions. (*People v. Musselwhite, supra*, 17 Cal.4th at p. 1249.) Given the instructions and the arguments of counsel, no reasonable juror would be confused about his or her duty to decide whether Hernandez had the requisite intent at the time he used force. The instruction did not prevent the jury from considering Hernandez's defense theory. If the jury had accepted Hernandez's defense, then, using CALCRIM No. 1600, it would have found him not guilty of robbery.

We have reviewed Hernandez's remaining contentions and we conclude he has not shown grounds for reversal.

12

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.