Filed 7/15/21  P. v. Swain CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B299440 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA120256) |
| v. | |
| CAMERON ONEIL SWAIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David C. Brougham, Judge.  Conviction affirmed, sentence reversed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General for Plaintiff and Respondent.

# INTRODUCTION

Cameron Swain stole food items from a grocery store and displayed a screwdriver when several grocery store employees confronted him. A jury convicted Swain of robbery and found true the allegation he used a deadly or dangerous weapon in the commission of the robbery. Swain argues the trial court committed two instructional errors. We affirm Swain's robbery conviction, but vacate the true finding on the weapon allegation.

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *Swain Robs a Grocery Store*

On March 17, 2019 Swain entered a grocery store and "caught [the] eye" of a manager, Alejandro Lopez. Lopez went to the office computer to access the security camera and saw Swain conceal hotdogs and granola bars in his bag. Lopez notified another manager at the store, Arturo Lazaro, of the possible theft.

Swain went to the register with a different item, a "hot chicken," for Lopez to ring up. Lopez asked Swain if he also wanted to pay for the items in his bag. Swain denied he had any items in his bag and started to leave the store. Lopez and Lazaro stood in front of Swain to block his exit. Swain took a silver object from his right pocket and said he was going to "poke" them, which caused Lopez and Lazaro to move out of the way. Lopez thought the object was a knife. Lazaro could not make out what the object was, "but assumed it was a knife." Lopez later said the item was a screwdriver.

As Swain left the store, Lopez and Lazaro followed him, and Lopez called the 911 emergency operator. A clerk from the

meat department joined Lopez and Lazaro outside the store. Lopez told the 911 operator that he saw a knife and that Swain put the knife up to his face. Lazaro testified that Swain never held anything to Lopez's face and that Swain never raised the object or used it in an aggressive manner.

Several girls were outside the store. As Swain walked away from the store, the clerk held up a box cutter and yelled, "If you don't get back into the store, I'm going to fuck you up." Swain turned around and told Lopez, Lazaro, and the clerk he had no problem murdering them in front of the girls. Swain lunged at the three grocery store employees and again said he was going to poke them.

Swain walked toward a bank in the adjacent parking lot, yelling profanities. Lopez and Lazaro followed Swain from a distance. Swain took a rock from the bank's planter and threw it at Lopez and Lazaro. The rock landed "two to three feet away" from them.

Police officers eventually apprehended Swain and searched his bag, where they found "two packages of sausage links" and "two boxes of protein bars." The officers also found a screwdriver in Swain's coat pocket.

### B.   *A Jury Convicts Swain, and the Trial Court Sentences Him*

A jury convicted Swain of robbery (Pen. Code, § 211)[1] and found true the allegation he used a deadly or dangerous weapon

---

[1]   Statutory references are to the Penal Code.

3

to commit the crime (§ 12022, subd. (b)(1)).[2]  The jury also convicted Swain on two misdemeanor counts of resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)).  The jury acquitted Swain on one count of making a criminal threat (§ 422) to Lopez, and the trial court dismissed one count of making a criminal threat to Lazaro.

The trial court sentenced Swain to a prison term of six years, consisting of the upper term of five years for the robbery conviction, plus one year for the weapon enhancement.  The court imposed concurrent terms on the two convictions for resisting, delaying, or obstructing a peace officer.  Swain appealed.

## DISCUSSION

A. *Swain Forfeited His Argument the Trial Court Erred in Instructing on Robbery, and Any Error Was Harmless*

1. *Relevant Proceedings*

The trial court instructed the jury on the elements of robbery with CALCRIM No. 1600, which includes the instruction that the People must prove "the defendant used force or fear to take the property or to prevent the person from resisting."  The trial court also instructed the jury that "fear, as used here, means fear of injury to the person himself or herself."

---

[2]  The jury actually found Swain used a "deadly and dangerous weapon, to wit, a screwdriver," but section 12022, subdivision (b)(1), requires only that the defendant use a weapon that is deadly or dangerous.

4

During closing argument, counsel for Swain argued that Lopez was not afraid during the robbery. Referring to store surveillance videos played (without sound) for the jury, counsel for Swain stated: "[W]hen you look at [Lopez's] body language during the videos, his body language is not consistent with somebody that's fearful. When you look at his actions of continuing to follow [Swain], that's not a scared person. When you look at his failure to go back to the store when dispatch told him to go back, that's not fear. When you look at his failure to warn—you know, he's all concerned, wait a second, there's [a group of girls] here. . . . [Y]ou can also hear in his tone. When you listen to the 911 call, . . . he's calm as a cucumber."

During rebuttal argument, the prosecutor responded: "Now, this idea that there was no fear here—and remember that we're talking about separate counts. . . . [W]e have a robbery as count 1, and we have criminal threats as count 4. Now, in a robbery it doesn't matter if the person is scared or not. It just matters if the person used or attempted to use fear to effectuate a taking. So if I've threaten[ed] you in that situation, and you're not afraid of me, it doesn't matter for a robbery as long as I try to make you afraid."

After the trial court excused the jury for the day, counsel for Swain objected to the prosecutor's argument on the element of fear. Counsel stated the prosecutor "was making [it] into an objective, not a subjective definition. He—it was along the lines of the person doesn't need to have fear as long as my client intended for there to be fear—something along those lines. I didn't . . . write down the exact wording."

The trial court asked if counsel for Swain wanted the jurors to understand "that the taking has to be effectuated by force and

fear." Counsel answered, "[T]he way I took the statement was a misinterpretation of the last line of fear is fear of injury to a person." The trial court responded, "I think [the prosecutor] did say several times that the taking has to be effectuated by force and fear, which is the correct statement of the law. I think he was attempting to distinguish the fear experienced during a robbery [from] the fear experienced in criminal threats. But in any case . . . I find no error."

## 2. *Swain Forfeited His Argument the Trial Court's Instructions on Robbery Were Erroneous*

A trial court has a duty to "'"instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case."'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 873.) A party may not argue on appeal that an instruction "'correct in law and responsive to the evidence'" was incomplete unless the party requested a clarifying instruction. (*Id.* at p. 901; see *People v. Buenrostro* (2018) 6 Cal.5th 367, 428 ["'[a] party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial'"].)

Swain does not dispute that the trial court properly instructed the jury on the elements of robbery.[3] Therefore,

---

[3]     Although "the fear necessary for robbery is subjective in nature, requiring proof 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished,'" the trial court does not need to instruct the jury on this aspect of the fear element. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 946; see *People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026 ["'The terms "force" and "fear" as used in the definition of the crime of

6

Swain's failure to object to the court's instruction or request an additional one forfeited his argument the trial court erred in instructing on robbery.  (See *People v. Harris* (2013) 57 Cal.4th 804, 852, fn. 14 [defendant forfeited any argument the court should have given an additional instruction on robbery where "the court correctly instructed the jury on the elements of robbery, and defendant failed to request a clarifying instruction at trial"]; *People v. Bolden* (2002) 29 Cal.4th 515, 557 [instructions on robbery "correctly explained the requirement that force or fear be used to accomplish the taking," and if "defendant thought the point needed additional clarification or explanation, defendant should have 'requested appropriate clarifying or amplifying language' [citation]; absent such a request, the point is not preserved for appellate review"]; *People v. Morehead* (2011) 191 Cal.App.4th 765, 774 ["Because the court's instruction did not omit or withdraw an element from the jury's determination, [the defendant] was required to request an additional or clarifying instruction if he believed that the instructions the court gave under CALCRIM No. 1600 were incomplete or needed elaboration," and because he failed to do so, "error cannot now be predicated upon the court's failure to give such an additional or clarifying instruction."].)

Swain acknowledges his counsel should have requested the additional or clarifying instruction he now asserts the court should have given.  (See *People v. Covarrubias*, *supra*, 1 Cal.5th at p. 901; *People v. Morehead*, *supra*, 191 Cal.App.4th at p. 774.) Swain argues, however, that such a request would have been futile because the trial court overruled counsel for Swain's

robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.'"].)

objection to the prosecutor's rebuttal argument that misstated the element of fear.[4]

The record does not support Swain's argument. A defendant is excused from failing to object if an objection would have been futile. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328; *People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4.) An objection is futile if making it would have been "fruitless" or an "'idle act[ ].'" (*People v. Kitchens* (1956) 46 Cal.2d 260, 263; *People v. Curlee* (2015) 237 Cal.App.4th 709, 715; *People v. Hopkins* (1992) 10 Cal.App.4th 1699, 1702.) To invoke the futility exception, the defendant must demonstrate, with citations to the record, that an objection would have been futile; the "ritual incantation that [the] exception applies is not enough." (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

Here, counsel for Swain objected only once, and to the prosecutor's argument, not the instruction. Nothing in the record suggests counsel could not have made a similar objection to the court's instructions on robbery or proposed an additional jury instruction. To the contrary, the record shows the trial court entertained and ruled on counsel for Swain's objections

---

[4]     The People concede the prosecutor's rebuttal argument misstated the law. Swain does not argue, however, his conviction should be reversed because the prosecutor engaged in misconduct. (See *People v. Rivera* (2019) 7 Cal.5th 306, 337 ["'[I]t is misconduct for a prosecutor, during argument, to misstate the law [citation], or to invite or encourage the jury to do what the law prohibits.'"]; *People v. Potts* (2019) 6 Cal.5th 1012, 1036 [prosecutorial misconduct "occurs when a prosecutor misstates the law by, for example, making remarks that would 'absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements'"].)

throughout the trial. A request for an additional or clarifying instruction on robbery would not have been futile. (See *People v. Friend* (2009) 47 Cal.4th 1, 29 [objecting would not have been futile because defense counsel objected frequently and the "trial court kept a firm hand" and "maintained a fair proceeding"]; *People v. Dykes* (2009) 46 Cal.4th 731, 775 [objecting would not have been futile where defense counsel did not experience constant "misstatements, demeaning sarcasm, and falsehoods, or ongoing hostility on the part of the trial court, to appropriate, well-founded objections"]; cf. *People v. Hill* (1998) 17 Cal.4th 800, 821 [given the "constant barrage" of unethical conduct by the prosecutor, "coupled with the trial court's failure to rein in her excesses," any attempt by defense counsel to object "would have been futile and counterproductive to his client"].)[5]

### 3. *Any Error in the Instructions on Robbery Was Harmless*

Even if Swain had not forfeited his argument, any failure by the trial court to instruct that actual fear is an element of robbery was harmless. Swain argues the applicable harmless

---

[5] *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, cited by Swain, is readily distinguishable. In that case the Supreme Court held defense counsel was excused from failing to object to a trial judge's "astonishing" remarks during jury selection* because the same judge had rejected defense counsel's repeated attempts to challenge the same remarks in another case. (*Id.* at pp. 645, 648.) There is nothing like that here.

> * The trial judge had a practice of instructing "prospective jurors to lie about racial prejudice and make up reasons to avoid jury service" and "to hide invidious bias." (*Id.* at p. 644.) The court in *Abbaszadeh* sent a copy of its opinion to the Commission on Judicial Performance. (*Id.* at p. 651.)

error standard is the one under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] of beyond a reasonable doubt. The *Chapman* standard applies, however, when the trial court misstates or omits an element of the offense. (*People v. Lamas* (2007) 42 Cal.4th 516, 526; *People v. Campbell* (2020) 51 Cal.App.5th 463, 493.) As discussed, that did not occur here.

Instead, the applicable harmless error standard is the one under *People v. Watson* (1956) 46 Cal.2d 818, 836, which applies where there are ambiguous, conflicting, or wrongly omitted jury instructions. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299; *People v. Beltran* (2013) 56 Cal.4th 935, 955.) Under this standard, Swain must show he would have obtained a more favorable result had the trial court given an additional instruction that "actual fear is an element of robbery."

Swain has not shown that, had the trial court given this instruction, he would have obtained a more favorable result. The evidence Lopez was afraid was strong. (See *People v. Brooks* (2017) 3 Cal.5th 1, 41 [any instructional inadequacy was harmless where the evidence of the defendant's guilt was strong]; *People v. Mayo* (2006) 140 Cal.App.4th 535, 551 [instructional error on the presumption of innocence was harmless where "the evidence of guilt was strong"].) "'Actual fear may be inferred from the circumstances, and need not be testified to explicitly by the victim.'" (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319; see *People v. Montalvo* (2019) 36 Cal.App.5th 597, 612 ["the victim need not explicitly testify that he or she was afraid of injury where there is evidence from which it can be inferred that the victim was in fact afraid of injury"].) And "the victim's fear need not be extreme to constitute robbery." (*People v. Morehead*, *supra*, 191 Cal.App.4th at p. 775; see *Bordelon*, at p. 1319 [the

"'extent of the victim's fear "do[es] not need to be extreme"'"'].)
Lopez testified that, while he was outside the store, Swain said
he was going to hurt and "poke" Lopez, Lazaro, and the clerk,
which scared Lopez.  Lopez testified Swain's additional
statement, that he had no problem murdering him, made him
"even more terrified."  Lopez stated that his fear "linger[ed] on
throughout the entire incident" and that Swain's use of the
screwdriver led Lopez to believe Swain was going to cause "bodily
harm to [him]."  While Lopez may have appeared unafraid
externally, as suggested by counsel for Swain's description of
Lopez's actions in the surveillance video, and the tone of Lopez's
voice in the recording of his 911 call may not have been unsteady
or quivering, Lopez's testimony at trial was consistent and
unequivocal:  Lopez was actually afraid Swain was going to hurt
him with the screwdriver.

> B. *The Trial Court's Instruction on the Weapon
> Enhancement Was Erroneous, and the Error Was Not
> Harmless Beyond a Reasonable Doubt*

> 1. *Relevant Proceedings*

The trial court instructed the jury with CALCRIM
No. 3145:  "If you find the defendant guilty of the crime charged
in count 1, which is robbery, you must then decide whether the
People have proved the additional allegation that the defendant
personally used a deadly weapon during the commission of that
crime.  A deadly weapon is an object, instrument, or weapon that
is inherently deadly or one that is used in such a way that it is
capable of causing and likely to cause death or great bodily
injury."  The trial court also instructed the jury:  "Someone

11

personally uses a deadly weapon if he or she intentionally . . . displays the weapon in a menacing manner."

In closing argument, the prosecutor argued a screwdriver is an inherently dangerous weapon: "A deadly or dangerous weapon is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such way that it is capable of causing and likely to cause death or great bodily injury. . . . [I]f you find [Swain] guilty of either [robbery] or [criminal threats] or both counts, then you ask yourselves: Did [Swain] personally use a deadly or dangerous weapon? And he did only if he intentionally did any of the following. The one thing you have to consider is that he displayed it in a menacing manner. So if he had that item, that screwdriver, which is an inherently dangerous item because it's sharp. It's like a knife. Because if you used it on somebody, you could hurt them or cause great bodily injury. If you use that knife in a menacing manner . . . or displayed that screwdriver in a menacing manner, then [at] that point, he has satisfied this particular special allegation[.]"

2. *The Trial Court Presented the Jury with a Legally Erroneous Theory*

The Supreme Court has distinguished two categories of incorrect theories. (*People v. Aledamat* (2019) 8 Cal.5th 1, 7 (*Aledamat*); *People v. Guiton* (1993) 4 Cal.4th 1116, 1128.) A factually inadequate theory "is an otherwise valid legal theory that is not supported by the facts or evidence in a case." (*Aledamat,* at pp. 7-8.) A legally inadequate theory "is incorrect because it is contrary to law." (*Id.* at p. 7.) We presume jurors are able to evaluate and ignore factually incorrect theories. (*Id.*

12

at p. 8; *Guiton*, at p. 1125.)  Legally incorrect theories require a more stringent standard of prejudice because jurors are less able to identify an incorrect statement of the law.  (*Aledamat*, at p. 8; *Guiton*, at p. 1125.)

Here, the trial court presented the jury with two theories to find the screwdriver was a deadly weapon: the screwdriver was "inherently deadly" and Swain used the screwdriver "in a deadly way."  Swain argues, the People concede, and we agree the trial court committed a legal error because a screwdriver is not an inherently deadly or dangerous weapon.  (See *People v. Koback* (2019) 36 Cal.App.5th 912, 924; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1106-1107.)[6]

> ### 3.  *The Trial Court's Error Was Not Harmless Beyond a Reasonable Doubt*

The Supreme Court has held that the *Chapman* harmless error standard applies to an "alternative-theory error" like the one here.  (*Aledamat*, *supra*, 8 Cal.5th at p. 13.)  The Supreme Court stated that the "reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt."  (*Ibid.*)  In determining under *Chapman* "whether the error was harmless, the reviewing court is not limited to a review of the

---

[6]    In addition, as noted, section 12022, subdivision (b)(1), applies when the defendant "uses a deadly or dangerous weapon in the commission of a felony or attempted felony."  The court's instruction did not refer to "dangerous," but the prosecutor argued (consistent with the statute but inconsistent with the instruction) Swain used a "deadly" or "dangerous" weapon.

verdict itself. An examination of the actual verdict may be sufficient to demonstrate harmlessness, but it is not necessary." (*Ibid*.) The reviewing court should consider the likelihood the jury applied the incorrect instruction, "not simply the strength of the evidence to support a guilty verdict using the correct instruction." (*People v. Thompkins* (2020) 50 Cal.App.5th 365, 399.)

In *Aledamat*, *supra*, 8 Cal.5th 1, which involved a box cutter rather than a screwdriver, the Supreme Court held the same instructional error the trial court in this case committed was harmless under *Chapman*. *Aledamat*, however, is distinguishable. The trial court in *Aledamat* gave an instruction the trial court in this case did not give: "'In deciding whether an object is a deadly weapon, consider all of the surrounding circumstances including when and where the object was possessed and any other evidence that indicates whether the object would be used for a dangerous rather than a harmless purpose.'" (*Id*. at p. 14.) The Supreme Court concluded that the jury "would likely view the 'inherently deadly' language in light of this additional instruction that it had to consider all of the circumstances" and that it was "unlikely the jury would simply view the box cutter as inherently deadly without considering the circumstances, including how defendant used it." (*Ibid*.) That crucial instruction is missing here. Therefore, unlike *Aledamat*, it is equally likely the jury here found the weapon allegation true under the "inherently deadly" theory or the "as-used" theory.

*Aledamat* is distinguishable in another way. The defendant in *Aledamat* thrust a box cutter at the victim's waist from a few feet away. (*Aledamat*, *supra*, 8 Cal.5th at p. 4.) The Supreme Court held that, even if the jury applied a colloquial

14

understanding of "inherently deadly," it would have found "the box cutter deadly in the colloquial sense of the term—i.e., readily capable of inflicting deadly harm—and that defendant used it as a weapon." (*Id.* at p. 15.) Here, there was conflicting testimony on how Swain used the screwdriver. Lopez testified that he saw Swain bring a sharp object out of his pocket and hold it at chest level and that, when he was outside the store with Lazaro and the clerk, Swain lunged at them. Lazaro testified, however, that he did not remember if Swain was still holding the "object" when the four men were outside the store and that Swain approached the clerk, not Lazaro. Lazaro also testified he never saw Swain use the screwdriver aggressively. Thus, even if the jury used the "colloquial sense" of the term "inherently deadly," the jury may not have found that Swain's use of the screwdriver was readily capable of inflicting injury. (See *Aledamat*, at p. 15.)

Courts also "look to the prosecutor's argument as a relevant circumstance in determining whether instructional error is harmless." (*People v. Powell* (2021) 63 Cal.App.5th 689, 715.) In particular, courts consider whether the prosecution focused its argument on the incorrect theory of law. (*Id.* at pp. 715-716; *In re Martinez* (2017) 3 Cal.5th 1216, 1226-1227.) In *Aledamat*, *supra*, 8 Cal.5th 1 the prosecutor "[a]t one point . . . stated that the box cutter was inherently deadly because 'you wouldn't want your children playing with' it, without further explaining the term. But no one ever suggested to the jury that there were two separate ways it could decide whether the box cutter was a deadly weapon." (*Id.* at p. 14.) In contrast, the prosecutor here told the jurors they could find the weapon allegation true because a screwdriver, like a knife, was inherently dangerous and because a screwdriver could be used or displayed in a menacing

15

manner.  Not only did the prosecutor argue both theories, the prosecutor made incorrect statements of law.  As discussed, neither a screwdriver nor a knife is an inherently deadly or dangerous weapon.  (See *People v. McCoy* (1944) 25 Cal.2d 177, 188; *People v. Simons*, *supra*, 42 Cal.App.4th at pp. 1106-1107.)

The People also argue no reasonable jury could find Swain displayed the screwdriver "in a menacing manner" without also finding he used the screwdriver as a deadly or dangerous weapon. But that's not true.  The trial court instructed the jury that using a deadly weapon meant displaying it in a menacing manner. Thus, by finding Swain used the screwdriver menacingly, the jury found that he used it personally, not that he was necessarily using it in a way capable of causing death or injury.  Considering the evidence and relevant circumstances (*Aledamat*, *supra*, 8 Cal.5th at p. 13), we cannot conclude the trial court's instructional error on the deadly or dangerous weapon allegation was harmless beyond a reasonable doubt.

## DISPOSITION

The robbery conviction is affirmed.  The true finding on the weapon allegation is reversed.  The trial court is directed to conduct a new trial on the enhancement.


SEGAL, J.


We concur:


PERLUSS, P. J.


McCORMICK, J.[*]

---

[*]      Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.