Filed 8/26/21  P. v. Lanway CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058977, G059751 |
| v. | (Super. Ct. No. 19HF0840) |
| ANGELA MARIE LANWAY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Consolidated with a petition for writ of habeas corpus.  Judgment affirmed; petition denied.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos, Seth M. Friedman and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

"The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety. It is sufficient to support the conviction that appellant used force to prevent the guard from retaking the property and to facilitate his escape. The crime is not divisible into a series of separate acts. Defendant's guilt is not to be weighed at each step of the robbery as it unfolds." (*People v. Estes* (1983) 147 Cal.App.3d 23, 28 (*Estes*).)

Defendant Angela Marie Lanway stole some items from a Wal-Mart and was confronted by a loss prevention officer (LPO) outside. Lanway hit the LPO with her shopping cart and a curtain rod, scratched his arm, burned his hand with a lit cigarette, and tried to kick him. Some of Lanway's forceful acts occurred just before the LPO recovered stolen merchandise from Lanway's shopping cart; some of Lanway's forceful acts happened just afterwards. A jury found Lanway guilty of an "*Estes* robbery."

Lanway argues any acts of force she committed after the LPO recovered the stolen property were not part of the robbery. Based on this notion, Lanway contends the prosecutor improperly argued the case (prosecutorial misconduct), and the trial court committed instructional error. Lanway is mistaken. Each time Lanway used force against the LPO she had not yet reached a point of relative safety; therefore, the robbery was still in progress. The precise timing of each of Lanway's forceful acts is wholly irrelevant. (See *Estes, supra,* 147 Cal.App.3d at p. 28.) Thus, we affirm the judgment.


I

STATEMENT OF FACTS AND THE CASE

Lanway was shopping in a Wal-Mart store. Lanway put a large, silver insulated bag in her shopping cart and began placing various items in it. Lanway went to the checkout area and paid for some of the items in the cart. However, Lanway did not take the insulated silver bag out of the cart, nor did she pay for any of the items in the silver bag, nor did she pay for the bag itself. Lanway then walked out of the front door.

Just outside of the store an LPO approached Lanway, identified himself, and showed his badge. Lanway ignored the LPO and kept walking while pushing her shopping cart. As the LPO stood in front of the shopping cart, Lanway kept pushing it, thereby hitting the LPO. Lanway claimed she "'paid for everything'" and showed the LPO a receipt, but it was from a different store. The LPO told Lanway she had not paid for the items in the silver bag, but Lanway "just kept trying to push the cart, and she started cursing at me." The LPO grabbed the silver bag from the cart and began walking towards the store.

As the LPO was walking away, Lanway hit him in the head with a curtain rod (that Lanway had paid for). Lanway then let go of the curtain rod and tried to grab the silver bag the LPO was now holding in his hand. Lanway's hand contacted the LPO's arm, causing a scratch. Lanway then burned the LPO's hand with a lit cigarette. Lanway also tried to kick the LPO in the groin, but the LPO was able to block Lanway's knee with his hand. The LPO was eventually able to return to the store with the recovered stolen merchandise.[1]

A Wal-Mart manager called the police. Minutes later, the police spotted Lanway in a nearby parking lot. After Lanway physically struggled with the police, they placed her under arrest.

A jury found Lanway guilty of second degree robbery and the court granted five years of formal probation. Lanway filed an appeal and a related petition for writ of habeas corpus. This court later consolidated the writ with the appeal.

---

[1] Percipient witnesses gave slightly varying accounts of the physical encounter between Lanway and the LPO. We interpret the facts—as we must—in the light most favorable to the judgment. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

II

DISCUSSION

Lanway claims the prosecutor committed misconduct during closing argument and the trial court committed instructional error. Both claims are predicated on Lanway's notion that any violent acts she committed against the LPO after he grabbed the silver bag did not support an *Estes* robbery conviction. Lanway also makes obligatory claims of cumulative error and ineffective assistance of trial counsel.

In the remainder of this discussion, we will: A) state general principles of law regarding the crime of robbery; B) analyze the claim of prosecutorial misconduct; C) analyze the claim of instructional error; D) analyze the claim of cumulative error; and E) analyze the claim of ineffective assistance of counsel.

A. *General Principles of Law*

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.)[2]

Under the robbery statute, property is within the "immediate presence" of a victim if, but for the perpetrator's force or fear, the victim could have retained possession of it. (*People v. Abilez* (2007) 41 Cal.4th 472, 507.) "The zone of immediate presence includes the area 'within which the victim could reasonably be expected to exercise some physical control over his property.'" (*People v. Webster* (1991) 54 Cal.3d 411, 440.) All on-duty employees have constructive possession of their employer's property and are considered victims within the meaning of the robbery statute. (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349-1350.)

---

[2] All further undesignated statutory references are to the Penal Code.

A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he uses force or fear to retain the property, carry it away, or to effectuate an escape. (*Estes*, *supra*, 147 Cal.App.3d at pp. 27-28.) Robberies in which force or fear is not used until after the perpetrator has already taken the loot "are commonly referred to as '*Estes* robberies.'" (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 223.)

There is no single "'temporal point'" at which all the elements of robbery must come together. (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539-540.) A robbery is a continuing offense; it does not end until the perpetrator has reached a place of relative safety. (*People v. Anderson* (2011) 51 Cal.4th 989, 994-996.) "[T]he crime of robbery begins with the commission of any of the defined elements and is completed when all of the remaining elements have been committed. It is a continuing offense that concludes not just when all the elements have been satisfied but when the robber reaches a place of relative safety." (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1059.)

"A perpetrator has reached a place of temporary safety with the property if he or she has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property." (CALCRIM No. 1603.)

*B. Prosecutorial Misconduct*

Lanway contends: "The prosecution's improper statements and tactics [during closing argument] rendered the trial fundamentally unfair by convincing the jury to convict for acts that could not legally form the basis for robbery, an error which contributed to the guilty verdict." Lanway is mistaken.

We evaluate claims of prosecutorial misconduct under well-established standards. "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial

5

fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

A prosecutor may commit misconduct by misstating the law. (*People v. Hill* (1998) 17 Cal.4th 800, 819-820.) Because of "'the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the State,'" a prosecutor is held to a standard higher than that of other attorneys. (*Ibid.*) On the other hand, a prosecutor may vigorously argue his or her case and "'"is not limited to 'Chesterfieldian politeness.'"'" (*People v. Jones* (1997) 15 Cal.4th 119, 175, disapproved on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823.)

Generally, in order to raise an alleged error on appeal, the issue must have first been raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) Specifically, a defendant forfeits a prosecutorial misconduct claim on appeal unless the defendant objected to the alleged misconduct when it occurred, and further asked the court to admonish the jury. (See *People v. Ervine* (2009) 47 Cal.4th 745, 806.)

Lanway did not object during the prosecutor's closing argument on the grounds that the prosecutor misstated the law, so this claim of error has been forfeited for purposes of appeal. Nevertheless, we shall address the merits of Lanway's claim. (See *People v. Vega* (2015) 236 Cal.App.4th 484, 495 [an appellate court may address a forfeited issue to forestall a related claim of ineffective assistance of counsel].)

During closing argument, the prosecutor repeatedly reminded the jurors about the direct testimony they had heard from the LPO and the other percipient witnesses. The prosecutor summarized Lanway's violent acts against the LPO, including: "She tried to stab him in the face with a cigarette. She hit him on the back of the head or the side of the head with a metal shower curtain rod." The prosecutor told the jury: "The fact that [the LPO] successfully got the property back is not a defense." The prosecutor also argued: "The force doesn't have to be used at the time the theft occurs.

6

The force can be used after when trying to get back the property. . . . When the theft occurs and force is used, regardless of whether it was at the time the theft occurred, the crime is completed."

Here, when Lanway committed violent acts against the LPO—as accurately summarized by the prosecutor during closing argument—Lanway had not yet reached a point of relative safety. That is, Lanway had not "successfully escaped from the scene" nor did she have "unchallenged possession of the property." (See CALCRIM No. 1603.) Therefore, the robbery was still in progress. (See *Estes*, *supra*, 147 Cal.App.3d at p. 28.) Indeed, after the LPO grabbed the silver bag from the shopping cart, Lanway escalated her use of force against the LPO in apparent attempt to retain the bag that contained all the merchandise she had just stolen from the Wal-Mart store.

In short, we find the prosecutor did not mislead the jury, misrepresent the evidence, or misstate the law during her closing argument. Thus, we hold that there was no prosecutorial misconduct.

Lanway contends: "In arguing that the elements of robbery were met, the prosecution incorrectly told the jurors over and over that they could convict for uses of force or fear after the LPO had regained sole possession of the property and had abandoned his pursuit of [Lanway] by attempting to return to the store." Again, Lanway is mistaken about the elements of a robbery conviction.

A robbery conviction does not require the robber to maintain possession of the stolen property during the robber's use of force or fear. (*People v. Pham* (1993) 15 Cal.App.4th 61, 65-66 (*Pham*).) In *Pham*, a man saw defendant stealing items from his car. (*Id*. at p. 64.) As the man approached, defendant ran away carrying a black bag. The man gave chase and was able to grab defendant by his shirt. Defendant dropped the bag, then began slugging the man in the head. The man's friend arrived to help subdue defendant, but defendant continued to struggle by "kicking, punching, biting, and kneeing" the man and his friend. (*Ibid*.) A jury convicted defendant of two counts of

7

robbery. (*Id*. at pp. 63-64.) On appeal, defendant argued there was insufficient evidence of robbery because he threw down the bag carrying the victim's stolen property before he began using force. (*Id.* at pp. 64-65.) The Court of Appeal disagreed. (*Id*. at p. 69.)

The *Pham* court recognized that if a defendant "truly abandoned the victim's property before using force, then, of course he could be guilty of theft, but not of . . . robbery." (*Pham*, *supra*, 15 Cal.App.4th at p. 68.) However, the court noted: "Here, the possession and asportation of the victims' property began when defendant started to walk away from [the man's] car with the loot and continued throughout the time defendant forcibly resisted the victims' attempts to take back their property. There is no requirement that defendant escape with the loot or that he reduce the property to his sole possession by chasing the victims away." (*Id*. at pp. 66-67.) Thus, the appellate court upheld defendant's robbery convictions. (*Id*. at p. 69.)

In this case, as in *Pham*, Lanway initially committed a theft, but it became a robbery when she used force to retain the stolen property and/or to escape. And as in *Pham*, there is no evidence in the record that Lanway "truly abandoned" the stolen property *before* the disputed acts of force. (See *Pham*, *supra*, 15 Cal.App.4th at p. 68.) In sum, it does not matter that some of Lanway's violent acts occurred after the stolen property had been removed from the shopping cart by the LPO because Lanway was still attempting to retain the stolen property and/or escape, and therefore the robbery was still in progress. (*Id*. at p. 67 ["There is no requirement that defendant escape with the loot or that he reduce the property to his sole possession"].) Thus, the prosecutor did not commit error during closing argument regarding the robbery charge.[3]

---

[3] Lanway intermingles various other miscellaneous objections about the prosecutor's closing argument within her opening brief, but these points are not sufficiently developed "under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v Reynoso* (2017) 10 Cal.App.5th 172, 179.)

*C. The Robbery Instruction*

Lanway contends:  "The standard jury instructions were not sufficiently tailored to the facts of the case as to make clear that the violent acts repeatedly emphasized by the prosecution could not form the basis for robbery" and the instructions did not "indicate that acts of force or fear used after the victim has regained possession do not satisfy the elements of the offense."  (Underlining omitted.)  Lanway is mistaken.

We review instructional error claims under a de novo standard of review. (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.)  "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .'"  (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111-1112.) "The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California."  (Cal. Rules of Court, rule 2.1050(a).)

"A criminal defendant is entitled, on request, to instructions that pinpoint the theory of the defense case."  (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142.) Pinpoint "instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case."  (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.)  "[A] trial court may properly refuse an instruction *offered by the defendant if it incorrectly states the law*, is argumentative, duplicative, or potentially confusing."  (*People v. Moon* (2005) 37 Cal.4th 1, 30, italics added.)

Lanway did not object to the trial court's use of a modified version CALCRIM No. 1600, the official instruction that explained the elements of the robbery charge to the jury.  (See *People v. Morehead* (2011) 191 Cal.App.4th 765, 774 ["the court properly instructed the jury under CALCRIM No. 1600 on the general principles of law governing the robbery charges"].)  Lanway also did not request a pinpoint instruction. Thus, Lanway's present objections to the completeness of the robbery instruction have been forfeited on appeal.  (See *Ibid.* [defendant "was required to request an additional or

9

clarifying instruction if he believed that the instructions the court gave under CALCRIM No. 1600 were incomplete or needed elaboration"].)

In any event, Lanway's instructional error claim fails on its merits. Just as in her prosecutorial misconduct claim, Lanway's instructional error claim is based on her failure to acknowledge that a robbery continues until the perpetrator reaches a point of relative safety. As we stated earlier, Lanway's *Estes* robbery was a continuing offense, and it did not end when the LPO retrieved the silver bag from the shopping cart.

Indeed, the trial court would have misstated the law had it instructed the jury (as Lanway now belatedly requests) that any "acts of force or fear used after the victim has regained possession do not satisfy the elements of the offense." (Underlining omitted.) Once again, a robbery "is not divisible into a series of separate acts. Defendant's guilt is not to be weighed at each step of the robbery as it unfolds." (See *Estes*, *supra*, 147 Cal.App.3d at p. 28.)

Lanway contends *People v. Robins* (2020) 44 Cal.App.5th 413, 419 (*Robins*), compels a different result. We disagree. In *Robins*, a shoplifter dropped stolen clothing on the ground after a physical confrontation with an LPO (defendant was an accomplice). (*Id*. at pp. 416-417.) The jury convicted defendant of an attempted *Estes* robbery. On appeal, defendant argued: "When someone takes clothes from a retail store and uses force to get away, it does not matter if a store employee successfully retrieves the property. The instant force is used, the *Estes* robbery is complete." Therefore, defendant argued "he cannot be convicted of an attempted *Estes* robbery because there is no such crime." (*Id*. at p. 416.) This court rejected defendant's argument, explaining that: "'Under section 663, a defendant can be convicted of an attempt to commit a crime even though the crime, in fact, was completed.'" (*Id*. at p. 420.)

In *Robins*, this court also explained in dicta: "The chronology of an *Estes* robbery is that the thief will necessarily have possessed the property, however temporarily, *before* using force. If the thief uses force while in possession of the

10

property, the *Estes* robbery is complete the moment force or fear is used: there has been a taking coupled with force. This is true even if the thief is ultimately unsuccessful in escaping with the goods. If, on the other hand, the thief abandons the property or the property is confiscated before using force, then there is no robbery at all. That is simply a theft plus an assault." (*Robins*, *supra*, 44 Cal.App.5th at p. 419.)

Lanway argues *Robins* "stand[s] for the proposition that the period for robbery ends when the property is confiscated." But again, she is mistaken. As we explained in *Robins*, if a shoplifter never uses force *before* the stolen property has been confiscated, then the thief has committed no *Estes* robbery. But if the shoplifter does, in fact, use force *before* the property has been confiscated—as Lanway did in this case— then the defendant has, in fact, committed an *Estes* robbery. And as we have explained previously, the *Estes* robbery *continues until the robber reaches a place of relative safety*, regardless of whether the stolen property is confiscated or abandoned *during* the *Estes* robbery. (See *Estes*, *supra*, 147 Cal.App.3d at p. 28.)

*D. Cumulative Error*

Lanway contends the cumulative effect of her two prior claims of error (prosecutorial misconduct and instructional error) compels reversal of her robbery conviction. We disagree.

"In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself." (*In re Reno* (2012) 55 Cal.4th 428, 483.) However, the rejection of each of a defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate." (*Ibid*.)

Here, since we have rejected each of Lanway's individual claims of error, there are no errors to cumulate.

11

*E. Ineffective Assistance*

Finally, Lanway filed a petition for writ of habeas corpus arguing ineffective assistance of trial counsel (once again, based on Lanway's mistaken notion regarding the elements of a robbery conviction).

But since we found no objectionable prosecutorial misconduct, and we found no need for pinpoint instructions on the robbery charge, Lanway's trial counsel did not provide ineffective assistance regarding the forfeited claims. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687-688 ["the defendant must show that counsel's representation fell below an objective standard of reasonableness"].)

Thus, Lanway's petition for writ of habeas corpus is without merit.

## III

## DISPOSITION

The judgment is affirmed. The consolidated petition for writ of habeas corpus is denied.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.