Filed 6/24/26  P. v. Barrett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085008 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE425326) |
| LANCE BARRETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Lance Barrett of three counts of robbery (Pen. Code, § 211; counts 1, 3 & 5), interference with the business of a public agency (§ 602.1(b); count 2), assault (§ 240; count 4), and making a criminal threat (§ 422; count 6).  The trial court sentenced him to 12 years in prison.

Barrett advances two claims of error on appeal.

First, Barrett contends insufficient evidence of force or fear supports his count 1 robbery conviction. Yet the record contains substantial evidence of him robbing the retail discount store by fear, as the store assistant manager testified she was afraid after Barrett moved toward her threateningly and later made what she understood to be a threat of physical harm.

Second, Barrett argues the court erred in instructing the jury about a permissive inference of guilt that could be drawn from the possession of recently stolen property on robbery counts 1 and 5 given the lack of dispute about his identity and intent to steal. (CALCRIM No. 376.) Any error in giving CALCRIM No. 376, however, was not prejudicial on this record.

We thus affirm.

## I.

We limit our description of the facts to the two counts of robbery at issue on appeal.

## A.

The robbery in count 1 occurred at a discount retail store.

In February 2024, a loss prevention officer at the retail discount store alerted the assistant manager that Barrett was a potential shoplifter.

At trial, the assistant manager explained that she would typically approach potential shoplifters and ask if she can help them with anything, "hoping because . . . they caught our attention, that they don't do anything." She would "continue asking if they wanted to purchase the items." When confronting a shoplifter in this manner, the assistant manager's goal was "to try to get the property back without having to go hands-on."

2

The assistant manager approached Barrett by the customer service desk at the front of the store. Barrett was holding a backpack and a duffel bag from the store. The assistant manager twice asked him, "'Is there a problem?'" The second time she asked, Barrett "got aggressive." Barrett told her, "'There is a fucking problem'" because he was "'going to steal [her] shit.'" He also "start[ed] to step forward towards" the assistant manager in what she perceived as a "threatening manner."

At that point, the assistant manager felt "afraid" for herself and her employees. She was afraid that "if [Barrett] was going to do anything," she "was the first person in his way." As a result, her goal shifted to "get[ting] him] out of the store." While Barrett called her names in a raised voice, the assistant manager kept asking him to leave and then called law enforcement. Before Barrett left the store, he told the assistant manager he would "catch [her] outside," which she took as a threat that "he was basically going to attack" her.

Eventually, Barrett exited the store with the stolen property. Once outside, he told the assistant manager that when law enforcement released him, "he was going to come back and show [her] what's up," which she understood to be a threat of physical harm. Law enforcement arrived and detained Barrett.

The assistant store manager testified that one of the reasons Barrett was able to leave with the stolen property was because she was afraid. But she never physically tried to retake the stolen items.

B.

The robbery in count 5 occurred at a convenience store.

The following May, Barrett entered the convenience store and eventually told the owner that he "could take anything he wanted, and he

3

was going to keep coming back and taking items whenever he wanted." As time went on, Barrett got "a little louder, a little more aggressive." The owner found Barrett's aggressiveness and refusal to leave the store "alarming."

Barrett then grabbed two pastries and told the owner, "there's nothing you can do about it." As Barrett left the store, the owner followed so he could "be able to tell [the police] which way [Barrett] went."

When Barrett saw the owner "coming around the counter," he told the owner he was "'going to knock the fuck out of you,'" took off his backpack, and assumed a "fighting posture." The owner understood it as a "serious threat" and testified that he was "afraid [Barrett] was going to knock [him] unconscious." As a result, the owner did not leave the convenience store threshold.

At trial, the owner confirmed that he was unable to get the pastries back because he was "afraid" of Barrett. He explained he "was not going to go and try to take them only because [Barrett] . . . took it to the level where he was telling me he was going to assault me."

II.

A.

Barrett argues his conviction for robbery on count 1 cannot stand because the record lacks evidence that he used force or fear to retain the property he took from the discount retail store. We conclude substantial evidence supports finding Barrett accomplished the robbery by fear.

We review a challenge to the sufficiency of the evidence for substantial evidence. In doing so, we examine the entire record in the light most favorable to the prosecution to determine if a rational factfinder could find the essential elements of the crime beyond a reasonable doubt. (*People v.*

4

*Zamudio* (2008) 43 Cal.4th 327, 357.)  Substantial evidence is reasonable, credible evidence of solid value, even if circumstantial.  (*Ibid.*)  We will not reverse unless under "no hypothesis" whatsoever could substantial evidence support the jury's verdict.  (*Ibid.* [cleaned up].)

Robbery is the felonious taking of personal property in the possession of another, from that person's immediate presence and against that person's will, "accomplished by means of force or fear." (§ 211.)  At issue here is the fear element.  "To establish a robbery was committed by means of fear, the prosecution must present evidence that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." (*People v. Morehead* (2011) 191 Cal.App.4th 765, 772 [cleaned up].)  "'The fear is sufficient if it facilitated the defendant's taking of the property.'" (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.)  "'Thus, any intimidation, even without threats, may be sufficient.'" (*Ibid.*)

Because robbery is a continuing offense, "[i]t thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away." (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)

Barrett emphasizes the lack of *physical* effort to reclaim the property he stole from the discount retail store to argue "nobody was trying to stop him."  He thus declares he "cannot be guilty of using force or fear to overcome an effort to retake the property that was never made."  Relying on *People v. Estes* (1983) 147 Cal.App.3d 23, 26, where a security guard attempted to detain the robber and the defendant responded by threatening to kill the guard with a knife, and the jury instruction about how store employees may use reasonable nondeadly force to detain someone suspected of stealing store merchandise, Barrett notes that "[s]uch efforts are absent here."

5

But Barrett provides no authority that limits accomplishing a robbery by force or fear to when a victim physically tries to regain the stolen property. On the contrary, our Supreme Court has upheld a robbery conviction where force was used to carry away property despite no physical attempt to retake it. (*People v. Gomez* (2008) 43 Cal.4th 249, 253.) In *Gomez*, a restaurant manager drove behind the defendant to help the police find him—but "did not intend to apprehend the defendant himself"—and the defendant shot at him. (*Ibid.*) *Gomez* confirmed that "robbery can be accomplished . . . if force or fear was used to carry [the property] away." (*Id.* at p. 256.)

Substantial evidence supports finding that Barrett used fear to carry away the store property. The assistant manager testified that she confronts and questions shoplifters like Barrett to "try to get the property back." But those efforts ceased after Barrett "got aggressive" and stepped towards her in a threatening manner. Barrett then told the store manager he would "catch [her] outside," which she understood as a threat of physical attack. She testified that this fear contributed to Barrett being able to leave with the stolen property. This substantial evidence suffices.

### B.

For his robbery convictions on counts 1 and 5, Barrett contends the court erred in instructing the jury with CALCRIM No. 376 (possession of recently stolen property) because his identity as the thief and his intent to take the property were undisputed. We conclude that, even assuming error, it was harmless.

The People argue this claim is forfeited because Barrett, who represented himself at trial, did not object to this instruction. But this purported instructional error is reviewable to the extent it affects Barrett's

6

substantial rights, as he claims it does. (*People v. Prieto* (2003) 30 Cal.4th 226, 247.) We thus consider the merits.

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

CALCRIM No. 376 addresses the inference that may be drawn for theft-related crimes when a defendant is found in knowing possession of recently stolen property. The trial court instructed the jury as follows:

> If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of robbery based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed robbery.
>
> The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of robbery.
>
> Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.

Barrett contends CALCRIM No. 376 "is inappropriate in a case like this, if not in all robbery cases." We reject Barrett's suggestion that this instruction is inappropriate in all robbery cases. Our Supreme Court has held that CALCRIM No. 376's predecessor instruction "generally is appropriate for theft prosecutions, as well as for robbery and burglary prosecutions." (*People v. Parson* (2008) 44 Cal.4th 332, 357; *People v. Lopez* (2011) 198 Cal.App.4th 698, 709 [CALJIC No. 2.15 is CALCRIM

No. 376's predecessor].)  We thus limit our discussion to CALCRIM No. 376 as applied to this case.

Barrett argues "giving the instruction in this case was state law error at a minimum" because neither identity nor intent to steal was in dispute. Given the lack of dispute on those elements, Barrett contends "no logical nexus" exists "between possession of recently stolen property and proving the facilitative use of force" or fear required for robbery.  As a result, he claims that "[g]iving the instruction served no purpose except to confuse the jury and undermine the burden of proof."

Even assuming error, however, Barrett has failed to establish he was prejudiced by the giving of CALCRIM No. 376.

Because he claims the instruction lowered the burden of proof, Barrett asks us to evaluate prejudice under *Chapman v. California* (1967) 386 U.S. 18.  Yet even when this type of instruction has been erroneously applied to nontheft offenses, our Supreme Court has "conclude[d] the error is one of state law only, subject to the miscarriage of justice test under *People v. Watson* (1956) 46 Cal.2d 818, 836." (*People v. Moore* (2011) 51 Cal.4th 1104, 1130.)  CALCRIM No. 376 "expressly states a determination of guilt cannot be based on possession alone." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 948.)  It also reminds jurors that they may not convict unless they are convinced that the People have proven each essential fact of guilt beyond a reasonable doubt.  "The instruction does not create a mandatory presumption that operates to shift the People's burden of proof to the defense, for the instruction merely permits, but clearly does not require, the jury to draw the inference described." (*Parson*, 44 Cal.4th at p. 356.)  As a result, the permissive inference arising from possession of recently stolen goods is not irrational and does not lower the burden of proof even when applied to

8

nontheft offenses. (*Moore*, at pp. 1132-1133.) We thus assess prejudice under *Watson*. (Accord *id.* at p. 1133.)

We conclude that instructing on CALCRIM No. 376, to the extent it was error, was not prejudicial because it is not reasonably probable Barrett would have obtained a more favorable result on counts 1 or 5 absent the instruction. (See *Watson*, 46 Cal.2d at p. 836.)

The prosecutor never mentioned CALCRIM No. 376 in closing arguments.

For count 1, the robbery at the discount retail store, Barrett admitted he (1) took the items and (2) thought the assistant manager was trying to stop him. And as discussed above, the assistant manager testified about how (1) Barrett stepped towards her in a threatening manner after she confronted him, (2) Barrett appeared to threaten to physically attack her as he left the store, and (3) her fear contributed to Barrett being able to exit the store with the stolen property.

For count 5, the robbery at the convenience store, as the owner followed Barrett out the door to see which way he went with the stolen pastries, Barrett assumed a fighting stance and threated to "knock" him "the fuck out." The owner testified of his resulting fear and how it dissuaded him from leaving the store threshold or trying to reclaim the pastries. Barrett's own testimony corroborates this evidence, as he admitted he took the pastries and, after the store owner told him to "'Come back with that'" and walked towards the exit, threatened to knock out the owner.

On this record, any error based on CALCRIM No. 376 was harmless.

9

### III.

We affirm.

CASTILLO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.